Grace BAGWELL, Widow of Rodger BAGWELL,
Deceased Employee *v.* FALCON JET CORPORATION,
Employer, and TRAVELERS INSURANCE COMPANY,
Carrier

CA 83-3                                     649 S.W.2d 841

Court of Appeals of Arkansas
Opinion delivered May 11, 1983

*Wallace, Hilburn, Clayton, Calhoon & Forster, P.A.,* by: *Joseph H. Purvis,* for appellant.

*Michael E. Ryburn,* for appellees.

GEORGE K. CRACRAFT, Judge. Grace Bagwell, widow of Rodger Bagwell, deceased, appeals from the decision of the Arkansas Workers' Compensation Commission denying her benefits for the death of her husband who was abducted on a parking lot belonging to his employer and subsequently murdered by his abductor. We conclude from our review of the record that the Commission misinterpreted the decision of *Foster d/b/a Big Chain Liquor Store* v. *Johnson,* 264 Ark. 894, 576 S.W.2d 187 (1979), and that as a result of this error it did not make findings of fact on pertinent issues. The cause must be remanded for further findings of fact essential to a decision in this case.

An understanding of our decision requires a reference to the evidence contained in the record. In doing so we are fully cognizant that it is within the province of the Commission to make findings of fact and we do not by reference to the evidence intend to assume that role here. On remand of this case it will be the function of the Commission to translate the evidence presented them into findings of fact.

According to the record Rodger Bagwell was employed by Falcon Jet Corporation at their plant located on the east side of Little Rock near Adams Field. There was evidence that it lay within a high crime area. Bagwell worked for Falcon Jet until midnight and had a second job delivering the Arkansas Gazette beginning at 12:30 a.m. The Falcon Jet plant and its parking area was surrounded in part by a chain link fence with the only vehicle entrace monitored by security provisions. On the night of August 10, 1978 Rodger Bagwell got off work at midnight, left the plant and walked with a fellow employee into a parking lot adjacent to the plant. They talked awhile and Bagwell then went to his own car. When the other employee left he saw Bagwell slumped forward in the seat of his car but assumed that he had dropped something so he did not stop. The security guard testified that he did not know Mr. Bagwell and that although

he observed the car leaving the plant he could not state that Bagwell was driving it. Bagwell did not report to his second job or return home that night. The next day the police found Bagwell's car two blocks away from the plant parked in front of his confessed assailant's house. The right door had a loose gasket and pry marks as though it had been broken into. Later in the day they found Bagwell's body buried in a shallow grave near the Falcon Jet plant. There was evidence indicating that his wallet and masonic ring were missing when the body was discovered and were later recovered from his assailant. There was evidence that the assailant had been formerly committed to the state hospital and had argued with members of his family and shot at some of them the day before the crime.

The assailant gave police officers two versions of the abduction. He first told them that he had stopped Bagwell's car on Tenth Street and had killed him by hitting him two or three times with a tire tool and had disposed of the body by throwing him into the Arkansas River. In his second confession he stated that Bagwell had stopped at a stop sign on Twelfth and Bond Streets and that he had hit him with the tire tool and shot him with a 410 shotgun.

There was evidence, however, that the locations were not on the route ordinarily taken by Bagwell and the officer opined that the abduction had not occurred as the assailant had described but had been initiated on the parking lot where the assailant had concealed himself in the back seat of Bagwell's car. There was evidence that the assailant had never been employed by Falcon Jet or at any other place where Bagwell had been employed and that they did not know each other.

While there was testimony that the area in which the plant is located was considered a high crime area there was evidence that there had been no previous thefts or acts of violence on the parking lot.

There was evidence that Bagwell worked as an upholsterer, did not handle company money, and at the time

of his assault had nothing in his possession belonging to Falcon Jet.

On this evidence the Commission made only two findings of fact:

## FINDINGS OF FACT

1. That the assault resulting in Rodger Bagwell's death either occurred or had its origin on the employer's parking lot.

2. That in view of the decision in *Foster* v. *Johnson,* 264 Ark. 894, 576 S.W.2d 187 (1-22-79), claimant has failed to prove by a preponderance of the evidence that the death of Rodger Bagwell is compensable under Arkansas Workers' Compensation law.

In its conclusions the Commission stated that in *Foster* the court had chosen not to comment on prior decisions, most of which were cited in the dissenting opinion of Chief Justice Harris. It further stated:

Even after concluding that the assault occurred on the parking lot of respondent employer, it would be contrary to the *Foster* decision to make a finding of compensability in the instant claim.

. . . .

Thus, as noted before, even if we were to assume that the assault of Rodger Bagwell took place in the parking lot of Falcon Jet Corporation, a finding of compensability would still seem inconsistent with the majority decision in *Foster.*

Though our decision here may have been different in the absence of the *Foster* decision, we are unable to ignore what appears to be a clear reversal, in *Foster,* of prior case law.

Although the finding that the assault occurred or had its origin on the parking lot is supported by substantial

evidence, we do not agree that *Foster* overruled prior decisions of the court or that it holds that under no circumstances can an assault which occurs on parking facilities owned by the employer be compensable.

The facts in *Foster* were essentially undisputed. William Johnson was a night clerk for a liquor store in Little Rock owned by Wayne Foster. Foster owned property across the street from the store. He requested his employees to park there because it was not only watched but would leave a parking area in front of the store for customers. All of the employees parked in that lot. One night Johnson locked the store at midnight and walked across the street to his car which was parked on Foster's lot. Two young men hiding behind his car stood up as he started to open the door and shot him twice. The assault was "unexplained and his assailants were never identified." There was no evidence of any attempt to rob Johnson or that he had assets of the employer in his possession at the time. On these facts in *Foster* the Commission said:

> It must be concluded, *without evidence to the contrary,* that this assault was related *in some nature* to the claimant's employment and therefore found to be compensable. (Emphasis supplied)

In reversing that decision the Supreme Court said:

> In this case we cannot find substantial evidence to support the Commission's conclusion that, '. . . without evidence to the contrary, . . . this assault was related *in some nature to the claimant's employment.*'

> It was the duty of the claimant to prove that the injury not only arose during the course of his employment but also *arose out of his employment.* Ark. Stat. Ann. § 81-1305 (Repl. 1976). That is, his injury grew out of, or resulted from his employment. *Duke v. Pekin Wood Products Co.,* 223 Ark. 182, 264 S.W.2d 834 (1954). There is no substantial evidence in this record that proves that the injury had any connection with the employment. *If the assault was connected with John-*

*son's employment such a fact must be assumed.* The incident occurred off the premises, and there is no evidence that it was connected with Johnson's employment. If robbery of Johnson, either as an individual or as an employee, was intended, there is no evidence of it. The motive could have been revenge for all the record shows. Any such conclusions must be assumed because they are not supported by substantial evidence. The assault simply remains *unexplained* and *unconnected* with Johnson's employment. (Emphasis supplied)

*Foster* holds no more than the mere fact that an assault that occurs on an employer's parking lot or in close proximity to his place of employment does not, standing alone, establish a causal connection which cannot be supplied by speculation. There must be affirmative proof of a distinctive employment risk as the cause of the injury.

Nor can we agree that *Foster* is at variance with the prior case law dealing with injuries on parking lots or other exceptions to the going and coming rule. None of those cases dispense with the requirement that there must be a causal connection between the injury and the employment or an employment risk. This is quite clearly stated in *Davis* v. *Chemical Const. Co.*, 232 Ark. 50, 334 S.W.2d 697 (1960) which was a landmark case in this area. There the court in affirming the award of benefits said with regard to parking areas:

> We think the injury to be compensable, for the case falls within the premises exception to the coming and going rule. . . . By this qualification of the coming and going rule it is recognized that an employee is entitled to a reasonable time to leave his employer's premises and that an injury suffered within that interval *may* arise out of and in the course of the employment. The principle has often been applied in cases involving a parking lot maintained by the employer; the cases are collected in *Schneider on Workmen's Compensation* (Permanent Ed.) § 1719.

Nor is *Foster* at variance with *Westark Specialties et al* v. *Lindsey,* 259 Ark. 351, 532 S.W.2d 757 (1976) which involved an injury resulting from an assault on a parking lot. There, quoting from *Townsend Paneling* v. *Butler,* 247 Ark. 818, 448 S.W.2d 347 (1969), the court stated:

> It is generally held that injuries resulting from an assault are compensable where the assault is *causally related* to the employment, *that such injuries are not compensable where the assault arises out of purely personal reasons.* (Emphasis supplied)

The determinative issue in this case is whether or not there was a causal connection between the assault and Bagwell's employment. The Commission's misapplication of *Foster* caused it to make no finding on that issue. It is beyond the power of an appellate court to make a finding of fact on that point. This is solely within the province of the Workers' Compensation Commission as factfinders and the only power of an appellate court is to remand the case to the Commission for further proceedings. *Dura Craft Boats* v. *Daugherty,* 253 Ark. 340, 485 S.W.2d 739 (1972); *Reddick* v. *Scott,* 217 Ark. 38, 228 S.W.2d 1008 (1950); *Long-Bell Lumber Co.* v. *Mitchell,* 206 Ark. 854, 177 S.W.2d 920 (1944).

Therefore, without expressing any opinion on the facts (which we do not weigh), we reverse the decision of the Compensation Commission and remand the cause with direction that it conduct a rehearing in whole or in part for such further findings, conclusions and award as it may see fit.

Reversed and remanded.

COOPER, J., concurs.

CORBIN, J., not participating.

JAMES R. COOPER, Judge, concurring. While I agree with the decision to reverse and remand this case, I feel compelled to express my opinion on some points raised by the majority. The case at bar is not controlled by *Foster*

*d/b/a/ Big Chain Liquor Store* v. *Johnson,* 264 Ark. 894, 576 S.W.2d 187 (1979). The Arkansas Supreme Court, in *Foster,* specifically held that the assault on Foster took place off the business premises. Therefore, it appears that the Supreme Court decided *Foster* on the basis that the injuries did not "arise out of" Foster's employment. In the case at bar, the Commission specifically found that the assault on the deceased employee either occurred or originated on the employer's parking lot. Thus, the "arising out of" requirement of the statute is satisfied. However, the Commission, apparently believing that *Foster* also dealt with the "in the course of" requirement, denied benefits without reaching the ultimate issue, *i.e.,* whether the assault actually occurred "in the course of" Bagwell's employment.

*Westark Specialties* v. *Lindsey,* 259 Ark. 351, 532 S.W.2d 757 (1976), is a case which, in my view, has a great deal of bearing on the case at bar. In *Lindsey,* the worker was seated in a vehicle on his employer's parking lot, apparently endorsing his paycheck. Two fellow employees, located some distance away from his vehicle, got into an argument and one of the co-workers discharged a firearm. The bullet struck Lindsey.

The risk of Lindsey's injury was essentially neutral, *i.e.,* not related to his work and not related to personal matters. Therefore, I can find no justification for finding that his accident was compensable unless the Arkansas Supreme Court intended to adopt Professor Larson's "positional risk" doctrine. This doctrine provides a method of satisfying the "in the course of" requirement where the source of the injury is unexplained. By unexplained, I mean that there is no evidence before the Commission as to whether the injury arose "in the course of" an employee's work, or whether it arose "in the course of" purely personal pursuits. For a general discussion of the "positional risk" doctrine, *see Larson, Workmen's Compensation Law* §§ 10.00 — 10.22.