DEFFENBAUGH INDUSTRIES and Travelers Insurance Company *v.* Earl ANGUS

CA 91-247                                    832 S.W.2d 869

Court of Appeals of Arkansas
En Banc
Opinion delivered July 8, 1992

*Michael E. Ryburn*, for appellant.

*Schieffler Law Firm*, by: *Edward H. Schieffler*, for appellee.

JAMES R. COOPER, Judge. Deffenbaugh Industries appeals from the Workers' Compensation Commission's decision finding compensable the injuries which Earl Angus sustained when a tornado totally destroyed the mobile home in which he lived on his employer's premises. The full Commission affirmed the finding of the administrative law judge that Mr. Angus' injuries "arose out of and in the course of" his employment. The appellant claims the

Commission erred in so finding. We affirm.

Earl Angus, the appellee, was manager of the appellant's facility in West Memphis, which was engaged in the business of collecting and reselling waste oil. The business operated 24 hours a day, seven days a week, and one condition of Mr. Angus' employment was that he reside on the premises, thus making himself available at all times. He obtained a zoning variance from the city of West Memphis which allowed a residence in a commercial area, and the minutes of the council meeting in which he was granted the variance stated that it was a "temporary permit for one year for security reasons." His employer purchased a mobile home and enclosed it by a fence on the premises of the waste oil facility. The rental agreement signed by the parties stated that "this agreement is being entered into by lessor because of lessee's employment relationship with lessor," and that "it is further agreed that the quarters provided to lessee by lessor are furnished for the convenience of the lessor and that the lessee is required to accept such lodging on the business premises of the lessor as a condition of employment of lessee by lessor." The appellee and his family lived in the mobile home, and though there was an office in another building from which Mr. Angus conducted business, there was a telephone installed in the mobile home which allowed truck drivers to contact him to notify him of their anticipated arrival.

On the night of December 14, 1987, Mr. Angus went to the residence while waiting for a truck driven by Billy Harris to arrive. He had been there approximately fifteen minutes, eating dinner, when a tornado swept through the West Memphis area. It struck the mobile home, killing Mrs. Angus and severely injuring Mr. Angus and his daughter. Mr. Harris arrived minutes after the storm and discovered the Angus family.

After a *de novo* review, the Commission affirmed the decision of the administrative law judge that Mr. Angus' injuries were compensable. It found that the constant presence of Mr. Angus on the premises was "partially necessitated for security purposes" and by the fact that he "had numerous duties which had to be performed as needed . . . twenty-four hours a day, seven days every week." At the time that the tornado struck, Mr. Angus had just finished performing various duties and was

expecting, within thirty minutes, a truck which he would be required to assist in unloading. Thus, said the Commission, his injuries arose out of and in the course of his employment.

■■ On appeal from the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Tiller* v. *Sears, Roebuck & Company*, 27 Ark. App. 159, 767 S.W.2d 544 (1989). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *San Antonio Shoes* v. *Beatty*, 28 Ark. App. 201, 771 S.W.2d 802 (1989). In such a case, the claimant has the burden of proving by a preponderance of the evidence that his claim is compensable, i.e., that his injury was the result of an accident that arose in the course of his employment and that it grew out of or resulted from the employment. *Wolfe* v. *City of El Dorado*, 33 Ark. App. 25, 799 S.W.2d 812 (1990).

■ In order for an employee's disability to be compensable, he must prove that he sustained an injury "arising out of and in the course of his employment." Ark. Code Ann. § 11-9-401 (1987); *Gerber Products* v. *McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985). The phrase "arising out of the employment" refers to the origin or cause of the accident. *Id*. The phrase "in the course of" the employment refers to the time, place and circumstances under which the injury occurs. *J&G Cabinets* v. *Hennington*, 269 Ark. 789 (Ark. App. 1980).

■ The appellant first argues that the appellee was not injured "in the course and scope of" his employment because he was not performing any job duties at the time he was injured, but rather was in his home eating dinner with his family. Nevertheless, Mr. Angus was a resident employee, on call 24 hours a day, seven days a week. Professor Larson states that in this situation "the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment." 1A Larson, *Law of Worker's Compensation* § 24.00 (1990). The controlling question as to whether an injury occurs "in the course of" the employment is whether the activity is reasonably expectable so as to be an incident of the employment, and thus, a part of it. *J&G Cabinets, supra*. Because one could reasonably expect an employee who was continuously on call and was required to live

on the premises to, at some point, sit down to eat dinner, we hold that the Commission's decision that Mr. Angus was injured while "in the course of" his employment is supported by substantial evidence.

■■ The appellant next argues that the Commission erred in declining to apply the positional risk doctrine. It discussed the doctrine but noted that Arkansas courts have not expressly adopted the positional risk doctrine. According to Larson, the doctrine is a substitute for the "arising out of" test, and he states:

> An important and growing number of courts are accepting the full implications of the positional-risk test: An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. It is even more common for the test to be approved and used in particular situations. This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in a particular place at the particular time when he is injured by some neutral force, meaning "neutral" neither personal to the claimant nor distinctly associated with the employment.

1 A. Larson, *The Law of Workmen's Compensation*, § 6.50 (1990). The only requirement to be met before positional risk may be applied is that the risk which causes the injury must be a neutral one. A tornado is an Act of God, and Larson states that Acts of God are classified as "neutral risks," meaning that they are neither personal to the claimant nor distinctly associated with the employment. A. Larson, *The Positional Risk Doctrine in Workmens' Compensation*, 1973 Duke L.J., 761.

At least five states have adopted the positional risk doctrine in cases involving injuries due to tornados. They are as follows: Louisiana (*Harvey* v. *Caddo DeSoto Cotton Oil Company, Inc.*, 199 La. 720, 6 So.2d 747 (1942)); Mississippi (*Wiggins* v. *Knox Glass, Inc.*, 219 So.2d 154 (1969)); Michigan (*Whetro* v. *Awkerman*, 383 Mich. 235, 174 N.W.2d 783 (1969)); Georgia (*National Fire Insurance Company* v. *Edwards*, 152 Ga. App.

566, 263 S.E.2d 455 (1979)); and Nebraska (*Nippert* v. *Shinn Farm Construction Company*, 223 Neb. 236, 388 N.W.2d 820 (1986)). Eleven states have either specifically adopted the positional risk doctrine in "neutral risk" situations or applied its principles without expressly adopting it.

Arkansas cases have either discussed the positional risk doctrine or have reached conclusions consistent with the reasoning of the doctrine. For instance, in *Kendrick* v. *Peel, Eddy, & Gibbons Law Firm*, 32 Ark. App. 29, 795 S.W.2d 365 (1990), we stated:

> Although the positional risk doctrine has not yet been applied in Arkansas to sustain an award of compensation, our cases have indicated that the doctrine would be applied in a proper case. In *Pigg* v. *Auto Shack*, 27 Ark. App. 42, 766 S.W.2d 36 (1989)[1], we cited the case of *Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W.2d 468 (1964), where compensation was awarded to a claimant who was injured at work by a gust of wind which 'lifted appellee into the air, carried him approximately seventy-five feet, and dropped him on the concrete apron.' We said in *Pigg* that while the words 'positional risk' were not used in *Parrish*, that case represents the type of fact situation where the positional risk doctrine arises.

32 Ark. App. at 31-32. *Kendrick* concerned an employee who was killed by an acquaintance. We found the risk to be personal rather than neutral and we declined to apply the positional risk doctrine.

Again we refer to the case of *Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W.2d 468, as being the type of fact situation to which the positional risk doctrine would be appropriately applied. *See Kendrick, supra.* The employee was picked up by a gust of wind and dropped onto concrete while securing his employer's property. The Supreme Court applied the "increased risk" test in holding that the injury was compensable because the

---

[1] We note that though *Pigg* v. *Auto Shack* did not adopt or apply the positional risk doctrine, discussion of it in the opinion incorrectly states that when applying the doctrine, it is a substitute for "in the course of" the employment. The doctrine actually supplies a presumption that the injury "arose out of" the employment.

employment:

> placed him at that moment in a more dangerous situation insofar as the 'Act of God' was concerned than that to which the general public in that vicinity was subjected; for the general public was not required to go outside at such a time but could remain in places of safety. *Id.* at 568.

■ In urging us to apply the positional risk doctrine, the appellant contends Mr. Angus' injuries are not compensable because his employment did not expose him to a greater degree of risk than other members of the general public in the same vicinity. (Several people in the West Memphis area were injured or killed by this storm.) Though the appellant contends that it is applying "positional risk," this approach is commonly referred to as the "increased risk test," and, as applied by the appellant, it does away with our two-pronged test of "arising out of and in the course of" the employment. The appellee also urges us to adopt the positional risk doctrine, suggesting a contrary result. He argues that but for the conditions and obligations imposed by his employment, he would not have been placed in the position to be injured by the "neutral risk." This is a correct application of the "positional risk test." We see no need to draw fine distinctions between types of "neutral risks." A tornado or windstorm is no less "neutral" than a roving lunatic or a stray bullet.

We now join those courts which accept the positional risk doctrine to provide compensation for employees who are injured by neutral risks. The question of who should bear the burden of the costs of such an injury is a policy consideration, and use of the positional risk doctrine where the risk is neutral places the risk of loss on the employer, the party most able to sustain such a loss.[2] This, we believe, is in keeping with the spirit of our workers' compensation law.

■ We have repeatedly held that the Workers' Compensation Act is to be liberally construed in favor of the claimant in accordance with the Act's remedial purpose. *Pinkston v. General Tire & Rubber Co.*, 30 Ark. App. 46, 782 S.W.2d 375 (1990);

---

[2] *See* John F. Scarzafava, *Areas of Changing Interpretation: The Positional Risk Doctrine* 3 Workmen's Compensation L. Rev. 204, 206 (1976).

Ark. Code Ann. § 11-9-704(c)(3). Contrary to the dissenting judge's opinion, we are not abandoning our prior case law requiring a claimant to prove by a preponderance of the evidence that his injury arose out of and in the course of his employment. We are simply liberally construing the statute in an extremely narrow class of cases, those which involve neutral risks. In applying the doctrine to the case at bar, Mr. Angus' injuries "arose out of" his employment because "but for" the employment, he would not have been in his home on his employer's premises at the particular time at which the tornado hit the area. We hold that because substantial evidence supports the Commission's conclusion that Mr. Angus' injuries arose out of and in the course of his employment, it must be affirmed.

Affirmed.

CRACRAFT, C.J., DANIELSON, J. and ROGERS, J., dissent.

GEORGE K. CRACRAFT, Chief Judge, dissenting. I respectfully dissent because I am of the very strong opinion that the "positional risk" doctrine has no place within the framework of our Workers' Compensation Act. In my judgment, application of the doctrine to injuries resulting from "Acts of God" ignores clear and unambiguous sections of our Worker's Compensation Act, and many years of case law interpreting and applying those sections.

The only "injuries" for which workers' compensation benefits are provided are those that are sustained in the course of the employment *and* that arise out of it. Ark. Code Ann. §§ 11-9-102(4); 11-9-401(a)(1) (1987). "In the course of the employment" refers to the time, place, and circumstances under which an injury occurs. The phrase "arising out of the employment" refers to the origin or cause of the accident. *J&G Cabinets* v. *Hennington*, 269 Ark. 789, 600 S.W.2d 916 (Ark. App. 1980). In order for an injury to arise out of the employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks. *Id*. It is so well established as to require no citation that the burden of proving compensability rests squarely upon the claimant. More recent legislation provides that the Commission *shall* determine *every* issue on the basis of whether the party having the burden of proof on the issue has established it by a preponderance of the evidence; in so doing,

the Commission must weigh the evidence impartially and without giving the benefit of doubt to any party. Ark. Code Ann. § 11-9-704(c)(2) and (4) (Supp. 1991).

Since there was evidence that the claimant in this case was required to be on duty twenty-four hours a day, the prevailing opinion correctly approves the Commission's finding that the claimant was within the course of his employment at the time of the injury. That finding, standing alone, however, is insufficient to sustain an award. The claimant was also required to establish that his injury arose out of and was causally connected with some risk incident to the employment.

In this case, the affirming judges are dispensing with the need for proof of this second vital and statutorily-required element and applying a doctrine that they say is "a substitute for the 'arising out of' test." Their application of this doctrine is based on a finding that the injury resulted from a " 'neutral risk[],' meaning . . . [one] neither personal to the claimant *nor distinctly associated with the employment*." (Emphasis added.) In my opinion, this is a complete abandonment of our prior rulings that "[t]here must be affirmative proof of a *distinctive employment risk* as the cause of the injury." *See, e.g., Gerber Products* v. *McDonald*, 15 Ark. App. 226, 229, 691 S.W.2d 879, 880 (1985); *Bagwell* v. *Falcon Jet Corp.*, 8 Ark. App. 192, 649 S.W.2d 841, 843 (1983).

In addition, the affirming judges reject a well-reasoned rule, accepted and applied to "Act of God" cases by the vast majority of our sister states. The general rule applicable to injuries resulting from tornadoes and windstorms is set forth in 99 C.J.S *Workers' Compensation* § 250 (1958), as follows:

> Injuries sustained by employees as the result of windstorms or tornadoes are *not ordinarily compensable where such employees are not, as such, exposed to the risk of such harm to a greater degree than the public generally in the same vicinity, but compensation may be had where the injured employee is by reason of his employment specially exposed to injury from such causes.* [Emphasis added. Footnotes omitted.]

The same rule is stated to be one of general application in 82 Am.

Jur. 2d *Workmen's Compensation* § 327 (1976). In J. Sandoval, Annot., *Workmen's Compensation: Injury or Death Due to Storms*, 42 A.L.R.3d 385, 391-92 (1972), the author states:

> Generally, most jurisdictions have taken the view that to recover compensation for an injury arising out of and in the course of employment, there must be a causal connection between such injury and the employment. Under this view, the courts have generally recognized the rule, known as the "peculiar" or "increased risk" rule, that *if an employee by reason of his duties is exposed to a special or peculiar danger from the elements — that is, one greater than that to which other persons in the community are exposed — and if an unexpected injury is sustained by reason of the elements, a causal connection is thereby established between the employment and the injury* and therefore the injury constitutes an accident arising out of and in the course of employment within the workmen's compensation acts. [Emphasis added.]

In support of the statements that this is a majority view, the author lists cases from various jurisdictions that have held in accordance with it. A number of other cases so holding are contained in footnotes in 1 A. Larson, *Law of Workmen's Compensation* § 8.21(a) (1990). Indeed, as the prevailing opinion notes, our own supreme court has applied this same majority rule. *See Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W.2d 468 (1964).

I cannot agree that this majority rule places any undue burden on workers or is somehow contrary to the spirit or purposes of our Act. It requires no more than that a worker prove that the character of his employment, or that the place at which that employment required that he be, was such as would intensify the risk of injury from extraordinary natural causes. In my judgment, this rule is much more in keeping with the purposes of our Workers' Compensation Act than is the positional risk doctrine; at least the majority rule complies with the legislative mandate that a worker prove a causal connection between his injury and some risk of his employment. Clearly, our Act was never intended to serve as general accident or health insurance. There is no presumption that a claim comes within the provisions

of the Act, and liberal construction of the Act in no way dispenses with the need for proof of compensability. *See Crouch Funeral Home* v. *Crouch*, 262 Ark. 417, 557 S.W.2d 392 (1977); *Duke* v. *Pekin Wood Products Co.*, 223 Ark. 182, 264 S.W.2d 834 (1954). Had the legislature intended to create an exception for cases involving Acts of God, it might easily have so provided.

Finally, notwithstanding the statement in the prevailing opinion that "[w]e now join those courts which accept the positional risk doctrine", I note that affirmances by an evenly divided court, such as this case, are not entitled to precedential weight. *France* v. *Nelson*, 292 Ark. 219, 729 S.W.2d 161 (1987).

DANIELSON and ROGERS, JJ., join in this dissent.