Michael G. LAY *v.* UNITED PARCEL SERVICE, et al.

CA 96-1349                                    944 S.W.2d 867

Court of Appeals of Arkansas
Division IV
Opinion delivered June 4, 1997

*Dunn, Nutter, Morgan & Shaw*, by: *Nelson V. Shaw*, for appellant.

*Rieves & Mayton*, by: *David S. Wilson, III*, for appellees.

ANDREE LAYTON ROAF, Judge. This is a workers' compensation case. The appellant, Michael G. Lay, worked as a delivery driver for the appellee, United Parcel Service ("UPS"). Lay claimed that he sustained right tennis elbow as a result of repeated lifting of packages and an electronic clip board, and that he further injured the elbow when he attempted to lift an unusually heavy package. On appeal, he asserts that the Commission's decision finding that he failed to prove a compensable injury from either a specific identifiable incident or rapid repetitive motion was not supported by substantial evidence. We affirm.

The evidence in this case and the disposition by the Commission may be summarized as follows. Michael Lay worked for twenty-one years as a delivery driver for UPS. His duties, in addition to driving, included picking up packages weighing up to 150 pounds, and typing a record of his transactions on a one-foot square, two-inch thick, four-to-five-pound electronic clip board called a diad board. Lay claimed that he was required to remove the board from its holder, which was mounted at arm's length on the dashboard of his truck, and replace it, each time he made one of his estimated seventy-five to eighty daily pick-up or delivery stops.

Beginning in December of 1992, Lay began experiencing elbow problems, diagnosed later that month by Dr. Jeffrey DeHaan as "lateral epicondylitis," commonly known as tennis elbow. Dr. DeHaan treated Lay with a cortisone shot. Over the next two years, Lay returned to Dr. DeHaan six times for the same treatment, but Dr. DeHaan's notes indicated the effectiveness of the treatments steadily decreased.

Lay further claims that on January 30, 1995, he attempted to lift a box that weighed considerably more than the seventy pounds or less that was indicated by the lack of a warning label required by UPS on heavy packages. Lay testified that he immediately felt a "pop," followed by elbow pain. Lay claims this injury was witnessed by several fellow-employees and that he immediately reported his injury to a supervisor, Allen Berry.

Lay did not seek immediate medical attention. He claims that he chose instead to endure the pain until his next scheduled appointment to receive a cortisone shot on February 10. When that treatment proved ineffective, he returned to be examined by a Dr. Alkire in the absence of Dr. DeHaan, on February 14. Dr. Alkire performed surgery on Lay's right elbow three days later.

Lay returned to work on April 3, 1995, and worked his regular shift until a week later, when he took a four-day vacation. On April 17, 1995, while unloading computers, he again felt a "pop" and pain in his right elbow. Lay claims he also informed supervisory personnel of this injury. Dr. DeHaan performed a second surgery on Lay's elbow, and Lay returned to work on June 4, 1995.

Lay did not file a Workers' Compensation claim until after the first surgery on February 17, 1995. He ultimately sought temporary, total disability benefits from February 17, 1995, through April 3, 1995, and from April 20, 1995, through June 2, 1995, along with payment of his medical bills and compensation for a five percent disability to the right upper extremity. UPS denied that Lay suffered a job-related injury, and the ALJ found that Lay did not sustain a compensable injury attributable to either a specific identifiable incident or rapid repetitive motion. Lay appealed to the Workers' Compensation Commission, which affirmed the ALJ, and adopted his findings.

Lay argues that the Commission should have found his injury compensable as either a "specific incident" injury, or as a "rapid repetitive motion" injury. We will address each theory in turn.

## 1. Specific incident

Lay was denied benefits under this theory because the Commission found that the medical evidence was silent as to the causal connection between his elbow problems and a specific traumatic incident as required by Ark. Code Ann. § 11-9-102(5) (Repl. 1996). Lay argues that his own testimony proves the specific time and place of the alleged incident, and that several other UPS employees witnessed the accident. Moreover, he argues that the

medical evidence does not rule out the possibility that he did in fact suffer a traumatic injury on January 30, 1995.

■■ It is well settled that determining the credibility of witnesses and the weight to be given to their testimony is exclusively within the province of the Commission. *James River Corp. v. Walters*, 53 Ark. App. 59, 918 S.W.2d 211 (1996). Moreover, the Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Jackson v. Circle T. Express*, 49 Ark. App. 94, 896 S.W.2d 602 (1995). This court views the evidence and all reasonable inferences deducible therefrom in a light most favorable to the findings of the Commission and affirms that decision if it is supported by substantial evidence. *Broadway v. B.A.S.S.*, 41 Ark. App. 111, 848 S.W.2d 445 (1993).

The Commission's decision finding that Lay failed to prove that his injury was attributable to a specific incident is supported by substantial evidence. As the Commission noted, the medical records that were made part of the record fail to mention Lay's alleged traumatic injury. The records do, however, indicate that the elbow injury was of long standing and gradually increasing severity. Dr. DeHaan's notes for October 6, 1994, Lay's last visit before his purported January 30, 1995, accident, are illustrative:

> Michael is here F/U bilateral tennis elbow. He's having a flare-up of his problems and we once again went through a long dissertation on surgery vs. not surgery. Once again he wished injections in lieu of surgery. We'll do this and I'll see him back here again on a prn basis.

Furthermore, the testimony of the only other witness to appear at the hearing besides Lay, Eddie Magness, the manager of the UPS distribution center where Lay worked, did not support Lay's claim of a traumatic injury. Magness testified that he was not made aware of the alleged injury until after Lay's first surgery on February 14, 1995, but that he had been aware that Lay was experiencing elbow problems for some time prior to the purported January 30, 1995, injury. Additionally, Magness denied that Allen Berry mentioned Lay's alleged accident. Finally, Lay himself testified

that he did not seek medical help for this injury until an already scheduled appointment some eleven days later.

Consequently, there is substantial evidence to support the Commission's finding that Lay did not prove that he sustained a compensable traumatic injury on January 30, 1995.

## 2. *Rapid repetitive motion*

Lay also argues that loading and unloading packages, as well as pulling out and replacing the four-to-five pound diad board each time he made one of his seventy-five to eighty pick-up or delivery stops each day, constitutes rapid repetitive motion, and he asserts that Dr. DeHaan's expert medical testimony provides the necessary causal connection to the etiology of his injury.

To find an injury compensable under this theory, a claimant must prove by a preponderance of the evidence that: (1) the injury arose out of and in the course of his employment; (2) that the injury caused internal or external physical harm to the body which required medical services or resulted in disability or death; (3) that the injury was caused by rapid repetitive motion; (4) that the injury was a major cause of the disability or need for treatment. Ark. Code Ann. § 11-9-102(5) (Repl. 1996). Additionally, to be compensable, the injury must be established by medical evidence, supported by "objective findings." Ark. Code Ann. § 11-9-102(5)(D) (Repl. 1996).

In rejecting Lay's claim for benefits, the Commission found that, while he had satisfied the requirements relative to objective medical evidence and "major cause," he had failed to prove that the job he performed was either rapid or repetitive. Further, the Commission relied on their narrow interpretation of what constituted "rapid repetitive motion" stated in their opinion in *Baysinger v. Air Systems, Inc.,* which this court subsequently reversed. 55 Ark. App. 174, 934 S.W.2d 230 (1996).

In *Baysinger,* the Commission found not compensable a welder's carpel tunnel syndrome caused by hammering and grinding metal, because he failed to prove that it was caused by "rapid repetitive motion." In reversing, this court found that the Com-

mission had interpreted Ark. Code Ann. § 11-9-102(5) (Repl. 1996) too narrowly, when it required performance of a single repetitive movement for prolonged periods of time for his injury to be compensable. On remand, this court ordered the Commission to consider Baysinger's multiple tasks together to determine compensability.

We do not find the holding of this court in *Baysinger* to be dispositive of this case. The precise issue addressed by the court in *Baysinger* was whether multiple tasks involving different movements could be considered together to satisfy the repetitive element of "rapid repetitive motion." In Lay's case, the Commission determined that Lay had not proved that his job was *either* rapid or repetitive. Although the multiple tasks Lay performed, involving loading and unloading boxes, and lifting the clipboard may be considered together, as repetitive under the holding in *Baysinger*, the statute further requires that the motions be rapid. Lay asserts that his motions were rapid because he made nearly eighty deliveries per day in a ten-to-eleven-hour shift, an average of one every eight minutes. He does not assert that driving the delivery truck or making the deliveries constituted a part of the rapid repetitive tasks. Rather, he, in essence, claims that he briefly performed several different rapid motions, and that those motions were repeated at differing intervals, during which he was required to drive to various locations, make the deliveries, return to his truck, and drive to the next location.

Although we do not provide a comprehensive definition of what constitutes "rapid repetitive motion," we conclude that the motions as described by Lay, separated by periods of several minutes or more, do not constitute rapid repetitive motion under the meaning of section 11-9-102(5)(A)(ii)(a). Consequently, we cannot say the Commission erred in ruling that Lay had not met his burden of proving that his job involved rapid repetitive motions.

Affirmed.

GRIFFEN, J., agrees.

CRABTREE, J., concurs.