Carol STEVESON *v.* FROLIC FOOTWEAR and Travelers

CA 99-895                                            20 S.W.3d 413

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 7, 2000

*Riffel and King,* by: *V. James King, Jr.,* for appellant.

No response.

K. MAX KOONCE, II, Judge. This is an appeal from the Arkansas Workers' Compensation Commission. Appellant sought medical benefits for treatment of carpal tunnel syndrome and de Quervain's tenosynovitis. The Commission reversed the decision of the administrative law judge and held that appellant's injury was not compensable because she had failed to prove that her carpal tunnel syndrome was the major cause of the need for treatment and because there were no objective findings in the record to support the diagnosis of de Quervain's tenosynovitis. We affirm in part and reverse and remand in part.

Appellant began working for Frolic Footwear in 1996. For her first year at Frolic, appellant performed the job of "cement[ing] vamps and quarters of shoes together." She developed problems in her forearm, which the company nurse treated with an ace bandage. That problem disappeared. Appellant was transferred to a new position after approximately a year. At her new position, appellant "used a hot glue gun to glue the insole to" house shoes on a "woodpecker beater" machine. After about two weeks on the woodpecker beater, appellant began experiencing problems with her right hand. She informed her employer and kept working. Her supervisor told her that she just needed to get used to her new job. Appellant described the difficulties as cramping in her right hand similar to a charley horse, popping in her wrist when rotated, and sometimes feeling as if she had hit her funny bone. The symptoms continued to worsen and she eventually sought treatment. The company doctor placed appellant on steroids, but once

she was taken off the steroids, her condition returned. Appellant went to her family doctor, Dr. Barré, and was later sent to Dr. Mahon by the Commission for an independent medical examination. Appellant sought no further treatment for her hand stating she could not afford it.

In a prehearing conference, the parties stipulated to the employer/employee relationship and agreed that the only issue to be litigated was "compensability regarding a carpal tunnel syndrome caused by rapid and repetitive motion." Only two medical reports were introduced into evidence and no medical testimony was offered.

The report of Dr. Hal S. Barré stated that he saw appellant on July 21, 1997, complaining of pain in her right hand and wrist. Appellant informed Dr. Barré that she had undergone a nerve conduction study, which she claimed revealed carpal tunnel syndrome. The nerve conduction study was not entered into evidence and Dr. Barré made no independent diagnosis of carpal tunnel syndrome. Dr. Barré did note that appellant had a painful wrist, a positive Finkelstein test, and tendonitis at the base of her thumb. He refused to speculate as to whether the injury was work related because he was not Frolic's workers' compensation physician and had not initially seen appellant on the matter. Although appellant's abstract of Dr. Barré's report indicates his belief that her wrist condition appeared to have been caused by and continued to be caused by her present job, this is a misstatement. Dr. Barré actually refused to speculate as to whether the injury was work related. He simply agreed to do appellant a favor and write a note to Frolic requesting that appellant be transferred to her previous position.

The second medical report entered into evidence was a letter by Dr. Mahon noting that appellant was seen in his office on July 29, 1997, for an independent medical evaluation. She complained of a painful "pop" of the right wrist with certain motions, a "strained" feeling of the right forearm, and a tingling and stinging sensation of the wrist and hand. She also complained of her right hand and forearm "going to sleep." Dr. Mahon described previous treatment which appellant had received in regard to this complaint. First, he noted that Dr. Carpenter described a swelling with a feeling of hardness in appellant's right hand on April 15. Second, he noted that appellant was given EMG/NCV studies on May 19. Appellant informed Dr. Mahon that Dr. Kumar diagnosed her with carpal tunnel syndrome based upon the EMG/NCV. However, no

records or reports by Dr. Carpenter or Dr. Kumar were introduced into evidence at the hearing.

Dr. Mahon performed various tests on appellant and reviewed the studies conducted by Dr. Kumar. These led him to a dual diagnosis: de Quervain's tenosynovitis and carpal tunnel syndrome. Specifically, Dr. Mahon stated:

> Although some of Ms. Steveson's symptoms are compatible with carpal tunnel syndrome and mild electrical changes have confirmed that, her primary complaint in my office was in regard to the thumb and the first ray, with symptoms compatible with de Quervain's tenosynovitis.

The carpal tunnel syndrome was substantiated by the electromyogram; however, the tenosynovitis was supported only by the complaints of the appellant and subjective tests done by Dr. Mahon in his office. Dr. Mahon recommended cortisone injections of both the carpal tunnel and the dorsal area. The administrative law judge granted compensation for appellant's injuries. The Commission reversed, holding that appellant failed to prove that the carpal tunnel syndrome was the major cause of the need for treatment and that there were no objective findings in the record to support the diagnosis of de Quervain's tenosynovitis.

For reversal, appellant argues that she should not be punished for the failure to provide additional objective medical evidence when the purpose of the hearing is to determine her eligibility to receive funds to obtain that medical evidence. She also argues that the Commission erred in finding that her carpal tunnel syndrome is not the major cause of her need for treatment.

■ ■ In order to receive benefits for appellant's alleged cumulative trauma injury of de Quervain's tenosynovitis, appellant must satisfy all of the following requirements: (1) proof by a preponderance of the evidence of an injury arising out of and in the course of her employment; (2) proof by a preponderance of the evidence that the injury caused external or internal physical harm to the body; (3) medical evidence supported by objective findings as defined in Ark. Code. Ann. § 11-9-102(16); (4) proof by a preponderance of the evidence that the injury was caused by rapid repetitive motion; and (5) proof by a preponderance of the evidence that the injury was the major cause of disability or need for treatment. *Lay v. United Parcel Service*, 58 Ark. App. 35, 944 S.W.2d 867 (1997). We affirm that part of the Commission's decision holding that there

were no objective findings in the record to support the diagnosis of de Quervain's tenosynovitis as required by Ark. Code. Ann. § 11-9-102(5)(A)(ii)(a), thereby denying claimant's entitlement to benefits for this diagnosis.

For appellant's alleged cumulative trauma injury diagnosed as carpal tunnel syndrome, appellant must again establish the above requirements except for rapid repetitive motion, which is construed to be present with a diagnosis of carpal tunnel syndrome. *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). The Commission erred in finding that appellant's carpal tunnel syndrome was not the major cause of her need for treatment. The carpal tunnel injury was not only the major cause, but the only cause of appellant's need for treatment for *carpal tunnel syndrome*. The fact that she also has a de Quervain's injury that is not compensable does not affect the compensability of her carpal tunnel syndrome. As we stated in *Tyson Foods, Inc. v. Griffin*, 61 Ark. App. 222, 966 S.W.2d 914 (1998), in affirming the Commission's award of benefits for carpal tunnel syndrome and aggravation of a claimant's arthritis and denial of benefits for tendinitis,

> We do not view Arkansas Code Annotated section 11-9-102(5)(E)(ii)(Supp. 1997), as precluding a finding that separate injuries or conditions that occur simultaneously or near in time to each other can be compensable. This is true even though the statute requires that both compensable injuries or conditions are the major cause of the disability or need for treatment. Neither does the fact that injuries are located in the same body member, as here, act to disqualify an award of benefits when a claimant meets the statutory requirements of the need for treatment.

*Tyson Foods, Inc.*, 61 Ark. at 230, 966 S.W.2d at 918. Nonetheless, we must still remand this case to the Commission for further proceedings. In denying benefits to appellant, the Commission did not reach the issue of whether her carpal tunnel syndrome was causally related to her employment. We therefore reverse and remand to the Commission to determine whether appellant's carpal tunnel syndrome arose out of and in the course of her employment with the appellee.

Affirmed in part; reversed and remanded in part.

ROBBINS, C.J., PITTMAN and ROAF, JJ., agree.

STROUD and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse the Commission and remand the case as to the de Quervain's tenosynovitis condition, and would order that Steveson be paid compensation benefits for carpal tunnel syndrome as well. Medical exams confirm that Steveson has what the Commission described as a mild case of carpal tunnel syndrome. However, the Commission held that it was Steveson's complaints about the thumb and "first ray" of her right hand, which Dr. Larry Mahon diagnosed as de Quervain's tenosynovitis, which is responsible for her disability and need for medical treatment. The Commission purportedly relied on Dr. Mahon's opinion regarding the de Quervain's tenosynovitis in finding that condition to constitute the major cause of Steveson's need for treatment, but denied her benefits to treat her carpal tunnel syndrome condition after finding that she failed to prove that it was work-related. Yet it refused to award benefits for the de Quervain's tenosynovitis condition based on a finding that the record lacked objective findings to prove that condition to be compensable.

The Commission's analysis is as self-contradictory regarding the carpal tunnel syndrome condition as it is concerning the de Quervain's tenosynovitis. Dr. Mahon flatly opined that Steveson's job duties were the cause of her de Quervain's tenosynovitis which he also related to the carpal tunnel syndrome. Addressing the causation issue, Dr. Mahon indicated: "It would appear ... that the job on which [Steveson] was placed in March 1997 involved a great deal of pulling on shoe material to stretch it, was the cause of her present difficulty." There is no different opinion in the record to contradict this assessment. Given this reality, I would reverse and remand with directions to the Commission to pay Steveson benefits for both deQuervain's tenosynovitis and carpal tunnel syndrome.

I am authorized to state that Judge STROUD joins this opinion.