2010 Ark. App. 487

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT and Risk Management Resources, Appellants**

v.

**Elmon G. STEWART, Appellee.**

**No. CA 10-49.**

Court of Appeals of Arkansas.

June 16, 2010.

Melissa Wood and Jarrod S. Parrish, Worley, Wood & Parrish, P.A., Little Rock, for appellants.

Philip M. Wilson, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Pulaski County Special School District appeals the decision of the Arkansas Workers' Compensation Commission finding that Elmon Stewart established that she sustained a gradual-onset injury to her right shoulder and awarding her benefits. The District contends that there is a lack of substantial evidence supporting the decision. We reverse and remand.

In 2006, Stewart began working for the District as a substitute school-bus driver. During this same time period, Stewart also worked part time at Comet Cleaners.[1] According to Stewart, in November or December 2007, she began experiencing pain in her right upper extremity. It was her belief that her pain was caused by opening and closing the door of the bus that she drove. She, along with two other witnesses, testified that the door handle was difficult to operate. She added that she had ten stops on her morning route and ten stops on her afternoon route and that, from start to finish, the duration of each route was about two hours. She also stated that she had trouble with the bus pulling to one side when she applied the brakes.

After the 2007 Christmas break, Stewart continued to experience pain in her right extremity. On January 11, 2008, she reported the problem to her supervisor Beulah Coston, who sent Stewart for medical treatment. She was diagnosed with shoulder, cervical, trapezius, and forearm strains; prescribed physical therapy, medication, and home exercises; and placed on light-duty work, which was provided by

---

1. Testimony from Stewart revealed that she worked at the cleaners pressing pants, Monday through Friday, approximately four hours each day. She said that she would remove pants from a buggy; tap the top of an automated machine, which caused a bar to come down and press the pants; and then she would hang them. She estimated that each day she pressed fifty pairs of pants.

the District. Stewart sought medical treatment from her family doctor on January 18, 2008, and an MRI was recommended and performed on January 22, 2008. The MRI showed that Stewart had adhesive capsulitis and a partial thickness supraspinatus tear of the right shoulder. She had surgery on her right shoulder on March 12, 2008, and was issued a seven-percent impairment rating.

At the onset, the District accepted the right-shoulder injury as compensable and paid benefits. However, on February 27, 2008, the claim was denied, and the District discontinued Stewart's light-duty work. Stewart, under the assumption that she was on sick leave without pay, did not return to work. She later learned that she had been terminated by the District in August or September 2008.

Stewart filed a claim for workers' compensation benefits for her right shoulder, contending that it was either a specific-incident or gradual-onset injury. She claimed entitlement to temporary-total-disability benefits from February 27, 2008 to September 23, 2009, medical benefits, a seven-percent anatomical impairment rating, and an attorney's fee. The District contended that Stewart did not suffer a compensable injury, and in the alternative, in the event of an award, that it was not responsible for benefits and expenses prior to the date it received notice of the claim on January 11, 2008.

The administrative law judge found in favor of Stewart and awarded benefits. The ALJ found that "[b]ased on the testimony of [Stewart] and her co-workers, the bus door was difficult to operate" and "[Stewart's] testimony and maintenance logs verify problems with the steering (the bus pulling to the side while braking)." Relying upon these findings, the ALJ concluded that "[t]hese rapid and repetitive motions were the major cause of [Stew-

art's] shoulder injury and resulting need for medical treatment and disability." The ALJ made no findings regarding Stewart's alternative contention that her shoulder injury was the result of a specific incident. The Commission affirmed and adopted the opinion of the ALJ. On appeal, the District argues that (1) the Commission's conclusion that Stewart suffered a compensable gradual-onset injury caused by rapid and repetitive motion is not supported by substantial evidence, and (2) the Commission arbitrarily ignored credible evidence establishing that Stewart's injuries were caused by the rapid and repetitive job duties at the cleaners.

In reviewing decisions of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Dorris v. Townsends of Ark., Inc.,* 93 Ark. App. 208, 210, 218 S.W.3d 351, 352 (2005). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Id.,* 218 S.W.3d at 352. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. *Id.,* 218 S.W.3d at 352. The substantial evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* at 210, 218 S.W.3d at 352.

To receive benefits for a gradual-onset injury, Stewart had to prove (1) that her shoulder injury arose out of and in the course of her employment with the District; (2) that the injury caused internal or external physical harm to her body which required medical services or resulted in death or disability; (3) that the injury was caused by rapid and repetitive motion; (4)

that the injury was the major cause of the disability or need for treatment; and (5) that the injury was established by medical evidence supported by objective findings. Ark.Code Ann. § 11–9–102(4)(A)(ii)(a), (D), (E)(ii) (Supp.2009); *Moody v. Addison Shoe Co.,* 104 Ark.App. 27, 29–30, 289 S.W.3d 115, 116–17 (2008).

The General Assembly has not established guidelines as to what constitutes rapid repetitive motion. *Malone v. Texarkana Pub. Schools,* 333 Ark. 343, 349, 969 S.W.2d 644, 647 (1998). As a result, that determination has been made by the fact finder in each case. *Malone,* 333 Ark. at 349, 969 S.W.2d at 647. The *Malone* court set forth a two-pronged test for establishing rapid repetitive motion (1) the tasks must be repetitive, and (2) the repetitive motion must be rapid. *Id.* at 350, 969 S.W.2d at 647. As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. *Id.* at 350, 969 S.W.2d at 647. Arguably, even repetitive tasks and rapid work, standing alone, do not satisfy the definition. *Id.* at 350, 969 S.W.2d at 647–48. The repetitive tasks must be completed rapidly. *Id.,* 969 S.W.2d at 648.

The Commission concluded that Stewart sustained a gradual-onset injury to her right shoulder. Its conclusion was based upon its finding that Stewart's operation of the bus's door handle and steering wheel constituted rapid and repetitive motion. The District argues that the Commission's conclusion must be reversed because there is a lack of substantial evidence supporting it. Specifically, it contends that there was a total lack of rapid-repetitive-motion evidence presented concerning the steering of the bus and that other proof only established that Stewart opened and closed the bus door ten times in the morning and ten times in the afternoon—the equivalent to opening and closing the bus door five times per hour. This, argues the District, does not rise to the level of rapid or repetitive motion. We agree.

In *Malone,* the claimant was a school custodian, cleaning bathrooms and classrooms, working five nights per week, eight hours per day, with several breaks. Her daily routine included fifteen or sixteen steps, each involving different motions with her arms and hands—including but not limited to mopping, dusting, scrubbing, restocking paper products, emptying trash cans, and vacuuming. *Malone,* 333 Ark. at 347, 969 S.W.2d at 646. Applying the two-pronged test to the evidence presented there about the nature, speed, and sequence in which the claimant performed her duties, the *Malone* court held that she did not perform rapid repetitive motions, even though her job required numerous movements repeated many times in a day, because the movements were different and separated in time. *Id.,* 969 S.W.2d at 648.

In *Lay v. United Parcel Serv.,* 58 Ark. App. 35, 37, 944 S.W.2d 867, 868 (1997), the claimant contended that he sustained right tennis elbow as a result of repeated lifting of packages and a one-foot square, two-inch thick, four-to-five pound electronic clip board. His duties, in addition to driving, included picking up packages weighing up to 150 pounds, and typing a record of his transactions on the clip board. *Lay,* 58 Ark.App. at 37, 944 S.W.2d at 868. He claimed that he was required to remove the board from its holder, which was mounted at arm's length on the dashboard of his truck, and replace it, each time he made one of his estimated seventy-five to eighty daily pick-up or delivery stops—once every eight minutes. *Id.* at 37, 41, 944 S.W.2d at 868, 870. In affirming the Commission, we held that these motions, separated by periods of several minutes or more, did not constitute

rapid or repetitive motion. *Id.* at 41, 944 S.W.2d at 870.

In contrast, in *Hapney v. Rheem Manufacturing Co.*, 342 Ark. 11, 18–19, 26 S.W.3d 777, 781–82 (2000), the supreme court reversed this court, finding that a claimant's assembly-line duties that required her to bend her neck once every twenty seconds was sufficient to satisfy the statutory requirement of rapid and repetitive motion. Similarly, another worker's assembly-line operation of an airgun that required her "to ensure one nut to be in place on an average of every fifteen seconds during the majority of her shift" satisfied the rapid-repetitive-motion element required for her gradual-onset cervical-injury claim. *High Capacity Prods. v. Moore*, 61 Ark.App. 1, 7, 962 S.W.2d 831, 835 (1998).

▓▓ In the instant case, there were only two descriptions presented about the motions of Stewart's bus-driver job. There was testimony that she opened and closed a difficult-to-operate bus door ten times every two hours (which equates to once every twelve minutes) and that there were problems with the steering of the bus. We hold that Stewart's actions fall within the noncompensable *Malone* and *Lay* genre of cases; therefore, there was not substantial evidence of rapid or repetitive motion.

While the evidence of Stewart opening and closing the bus door touches on the repetitive nature of her job, there was no evidence about the time interval between each event. Likewise, this evidence fails to establish the rapidity requirement. There no testimony about how quickly or slowly Stewart actually operated the door handle during each event. As for the steering problems on the bus, there was no testimony from any witness about how often the bus pulled to the side, how it affected her right shoulder, what motion her shoulder engaged in when the bus pulled to the side, or how rapid or repetitive that motion was. Therefore, we hold that there is a lack of substantial evidence supporting the Commission's opinion that Stewart's job duties were rapid and repetitive.[2] As such, we reverse the Commission's opinion awarding benefits on this basis.

▓▓ Disposing of the rapid-repetitive-motion issue, we address Stewart's argument that the Commission's decision should be affirmed because "it reached the correct result." She contends that if her work duties do not support a gradual-onset injury, the record nonetheless supports a compensable injury caused by a specific incident or because it is an unexplained injury. However, we cannot affirm based upon the "right result, wrong reason" theory because in workers' compensation cases it is our duty to review the decision of the Commission to determine whether it is supported by the facts found by the Commission. *Cook v. Aluminum Co. of America*, 35 Ark.App. 16, 20, 811 S.W.2d 329, 332 (1991). In appeals from the Commission, we cannot indulge the presumption used in appeals from trial courts that even if the court states the wrong reason, we will affirm if the judgment is correct. *Cook*, 35 Ark.App. at 20–21, 811 S.W.2d at 332. Meaningful appellate review requires adequate and specific findings. *Pharmerica v. Seratt*, 103 Ark.App. 9, 15, 285 S.W.3d 699, 704 (2008).

Here, we cannot affirm for the "right result, wrong reason" and proceed under Stewart's alternative theories because the Commission failed to address or make any

---

**2.** Based on this disposition, it is not necessary to address the District's argument that the Commission arbitrarily ignored credible evidence that Stewart's injuries were caused by her job duties at the cleaners.

findings of fact on these alternative arguments. While we do not defer to the Commission on questions of law, we also do not act as the fact finder. *Heptinstall v. Asplundh Tree Expert Co.*, 84 Ark.App. 215, 223, 137 S.W.3d 421, 426 (2003). Therefore, we remand for additional findings with regard to Stewart's alternative theories of compensability. *Pharmerica*, 103 Ark.App. at 15, 285 S.W.3d at 704; *Heptinstall*, 84 Ark.App. at 223, 137 S.W.3d at 426.

Reversed and remanded.

HART and KINARD, JJ., agree.