STALLINGS BROS. FEED MILL *v.* STOVALL.

4-9923                               254 S. W. 2d 460

Opinion delivered February 2, 1953.

---

[1] i.e., by increasing the contribution rate to replenish the experience account of each plaintiff.

*Goodwin & Riffel,* for appellant.

*Thad Tisdale,* for appellee.

WARD, Justice. Jesse Stovall, appellee, on or about September 1, 1950, became acutely aware of an injury to his back, which injury he thought arose out of and in the course of his employment with appellant. His claim for compensation was disallowed by the Workmen's Compensation Commission. The Circuit Court, on review, reversed the Commission and Stallings Bros. Feed Mill, the employer, prosecutes this appeal to reinstate the Commission's findings.

The trial judge, in a comprehensive statement of his findings which evidences much care and ability, reached the conclusion that there was no substantial evidence to support the findings of the Commission. In reaching the conclusion he did the trial judge recognized the well-established rule that the findings of the Commission are tantamount to the findings of a jury on questions of fact and should, therefore, be sustained by this Court [as well as by a trial court] if they are supported by substantial evidence. The decision, therefore, for us to make is not what we would have done had we been members of the Commission, but it is whether the findings made by the Commission are supported by substantial evidence. Our conclusion is that the findings are so supported.

In view of the sole decisive question stated above, it will not be necessary to set out the evidence fully and particularly the testimony supporting appellee's view.

Jesse Stovall, age 50, had worked for Stallings Bros. Feed Mill about five years. At the time he became incapacitated, and for some time before, he was engaged

in delivering by truck 100 pounds sacks of feed to retail merchants. It was and had been a part of his duties to lift these sacks in order to load and unload his truck. On September 1, 1950, the day of the alleged injury, appellee, with a helper, as was usual, unloaded about 50 sacks at a retail store in Conway. In doing so he became aware of a pain in his leg—not too severe. Later he drove to Opal, noticing some pain on the way, and there made another delivery. While he was attempting to handle another sack the pain in his leg became so severe that he let the sack fall and he was unable to assist further in unloading. At this time he made mention of the pain for the first time to his helper. According to appellee he made other deliveries though he could not lift the sacks, finished his route, returned to appellant's place of business at Morrilton, and drove home where he was helped into the house. He has not worked since.

On October 17, 1950, an operation disclosed a protruding or ruptured dislocated disc between the fourth and fifth lumbar, which was removed. The doctor could not tell just how long the disc condition had *existed* but thought it was a gradual type caused by lifting over a period of time. There was medical testimony to the effect that the type of work appellee was doing could have produced the rupture with no history of previous injury; that the day the injury occurred was when the disc ruptured or an old condition was aggravated; and that the onset of appellee's disability was when he began having pain on September 1st.

Based on the above evidence it appears reasonable that the Commission was legally bound to award compensation. However there was other testimony which the Commission was obligated to consider and which it had the exclusive right to evaluate. The substance of that testimony is set out below.

On September 11th, appellee's employer made a report of the injury and in answer to the question "How did the accident happen?" he stated: "The man gave no history of a specific accident but in course of his work he developed pain in his hip to his ankle." In making

reports to doctors and investigators after the injury, and before the hearing, appellee failed to attribute his injury to lifting sacks on any particular occasion. On one occasion, at least, appellee was quoted as saying he had been lifting sacks for several years just as he did on September 1st; that his motions were the same; and that he recalled no unusual strain on the day of injury. On these occasions appellee is alleged to have made statements indicating he first noticed the pain while driving the truck on the day in question and that he noticed the pain before he left for work that morning.

In addition to the above, it is in evidence that appellee had trouble with his side or hip the year before; that he had been treated for kidney trouble; that a chiropractor had recommended treatment for a "catch" in his back in 1949 which he was unwilling or unable to take; and that he lost about thirty days work in the summer of that year.

In trying to apply the law as it has been developed by the decisions of this Court to the facts in this case, some interesting hairline questions can be raised. Without recapitulating our many decisions, it suffices here to point out that some cases indicate that no fortuitous incident in the nature of an accident is necessary to sustain an award by the Commission, while others indicate just the opposite. Some of the first class of cases are: *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Sturgis Brothers* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629; and *Quality Excelsior Coal Co.* v. *Maestri,* 215 Ark. 501, 221 S. W. 2d 38. Some recent cases which indicate there must be something in the nature of an accident before recovery can be sustained are: *Baker, et al.* v. *Slaughter,* 220 Ark. 325, 248 S. W. 2d 106; *Farmer* v. *L. H. Knight Co.,* 220 Ark. 333, 248 S. W. 2d 111; and *C. & B. Construction Co.* v. *Roach,* 220 Ark. 405, 248 S. W. 2d 368.

In this connection it is well to quote the definition of "injury" as it is set out in the 1948 Initiated Act No.

4, *Ark. Stats. (Supp.)* § 81-1302 (d), the pertinent part of which reads:

" 'Injury' means only accidental injury arising out of and in the course of employment. . . ."

The suggested inconsistency in our decisions is, we think, more apparent than real, and stems more from the detached significance attributable to certain words, used perhaps carelessly or unnecessarily, than from the result arrived at in the several cases. We are convinced, after much deliberation, that no clear-cut, practicable and workable rule can be spelled out for determining, in hairline cases, whether a state of facts constitutes an "accident" or "accidental injury" or does not within the meaning of the statute. This is just another way of saying that we conclude that each case must be decided, on this point, on the facts presented, and that the situation presents a question of fact to be determined by the Commission, being bound, of course, to apply the facts to the law.

Here the Commission found as a fact "that any condition from which this claimant suffered to the back and right leg and which caused disability subsequent to September 1, 1950, was not the result of an accidental injury arising out of and in the course of his employment with this respondent employer."

We cannot say the finding made by the Commission in this case was not supported by substantial evidence. Therefore, the trial Court must be reversed and the Commission's finding reinstated.