Lilly KILDOW *v.* BALDWIN PIANO & ORGAN

CA 96-1268                                    948 S.W.2d 100

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered July 2, 1997

[Petition for rehearing denied August 20, 1997.*]

---

\* GRIFFEN, J., would grant.

196

*Odom, Elliott, Winburn, Watson, Smith, Odom, & Myers*, by: *Timothy J. Myers*, for appellant.

*Ledbetter, Hornberger, Cogbill, Arnold & Harrison*, by: *James A. Arnold, II*, for appellee.

TERRY CRABTREE, Judge. Appellant Lilly Kildow appeals the decision of the Workers' Compensation Commission affirming the Administrative Law Judge's order denying benefits for her Carpal Tunnel Syndrome (CTS). The Commission based its denial of benefits on appellant's failure to prove adequate rapidity of motion to satisfy the Commission's interpretation of "rapid

repetitive motion injury." *See* Ark. Code Ann. § 11-9-102(5)(A)(ii)(a) (1996).

Appellant urges two points for reversal. First, she argues that the Commission's interpretation of the statute requiring proof of rapid repetitive motion is erroneous in light of the specific inclusion of CTS as a compensable injury in the statute. Second, appellant argues that the Commission's denial of benefits, even under its interpretation of the "rapid repetitive" dispute, is not supported by substantial evidence. We reverse based on a lack of substantial evidence to support the Commission's decision; however, in doing so, we reject appellant's statutory construction argument and affirm the Commission's requirement that carpal tunnel syndrome claimants must prove rapid repetitive motion.

## I. Facts

Appellant was employed by appellee Baldwin Piano Company from February 1, 1993, until March 7, 1994. Her duties consisted primarily of manning a station on an assembly line where she secured small electrical components to a 1/8th-inch-thick board with three to five small wires that were two to three inches in length. Appellant typically gripped the board with her left hand while squeezing and twisting the wires with pliers in her right hand, and then sent her completed task to the next station on the assembly line. She testified that she performed these operations over and over again for eight to ten hours a day, five to six days a week, with two fifteen-minute breaks, a thirty-minute lunch break, and short restroom breaks as needed for nearly a year. Beginning in January of 1994, she complained to her supervisor of pain in her wrists. The pain worsened until she saw the company physician, Dr. David Ureckis, on March 10, 1994.

Dr. Ureckis's initial report noted a nerve conduction velocity test suggesting borderline CTS. Dr. Ureckis put appellant in splints, took her off work, prescribed anti-inflammatory medication, and referred her to Dr. Tom Patrick Coker for surgical evaluation.

Dr. Coker's initial report from March 31, 1994, stated that she had "an EMG which confirms a right carpal tunnel. The left

wrist was non-significant." Appellant was seen by Dr. Coker seven times and completed a multi-visit course of physical therapy over the next several months.

Appellant was involved in a motor-vehicle accident on August 20, 1994, which complicated her medical records with chiropractic and psychological treatment apparently unrelated to her workers' compensation claim. Eventually, she was referred to another specialist, Dr. David A. Davis, a neurologist, who opined:

> Her constellation of symptoms would suggest reflex sympathetic dystrophy, perhaps supported by the bone scan. I am unable to make that diagnosis because of the absence of significant temperature or skin changes, and because of the give way weakness and peculiar hypethesia, both of which suggest symptom magnification. I'll be discussing with you referring her to the University of Arkansas Medical School for evaluation in that regard.

Appellant was referred to UAMS, and treated by Dr. Harris Gellman, a professor and Chief of the Hand Surgery Service. Dr. Gellman reviewed the tests of the previous treating physicians and administered additional tests before recommending carpal tunnel release surgery.

Appellee denied coverage for appellant's CTS and medical treatment. The Administrative Law Judge held that appellant's activities were not sufficiently rapid, and the Commission agreed. Appellant brings this appeal, raising two points.

## II. Substantial Evidence

This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether this court might have reached a different result from that reached by the Commission or whether the evidence would have supported a contrary finding. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995). If reasonable

minds could reach the result shown by the Commission's decision, we must affirm the decision. *Id.*

Even if the Commission's reading of the statute requiring claimants to prove both rapid and repetitive motion is upheld, appellant still claims that the facts here do not amount to substantial evidence to support a finding that her work was not sufficiently rapid to qualify as a rapid repetitive motion injury. The question for this court is whether reasonable minds would accept the finding that appellant's work was not "rapid" based on the evidence in the record.

More specifically, the relevant finding is found in the opinion of the Commission, along with some explanation of the Commission's view of the proof required to establish carpal tunnel syndrome as compensable:

> The claimant failed to prove by a preponderance of the evidence that her carpal tunnel syndrome was cause [*sic*] by rapid repetitive motion. Although the Act does not establish any guidelines with regard to the extent of motion necessary to satisfy the requirement of rapid motion or with regard to the nature of the motion necessary to satisfy the requirement of repetitive motion, we held in *Throckmorton v. J&J Metals*, FC Opinion filed August 14, 1995 (E405318), that "the requirement that the condition be caused by rapid repetitive motion requires proof that the claimant's employment duties involved, at least in part, a notably high rate of activity involving the exact, or almost exactly, same movement again and again over extended periods of time." We further held that whether the employment duties satisfied the statutory requirement is a fact question to be decided based upon the evidence presented in each case.
>
> . . .
>
> The claimant has failed to prove by a preponderance of the evidence that her injury was caused by rapid repetitive motion. There is simply no evidence in the record to prove that the claimant's activities fall within the definition of rapid.

The only evidence regarding appellant's job activities came from her own testimony before the ALJ. No company representatives disputed her account of her daily tasks.

In denying benefits for appellant's CTS, the Commission relied on the requirements for gradual-onset injuries announced in its own opinion, *Throckmorton, supra.* Notably, the Commission defines the two terms, "rapid repetitive," together as a single, interrelated concept.

However, our holding in *Baysinger v. Air Systems*, 55 Ark. App. 174, 934 S.W.2d 230 (1996), rejected the Commission's language "exact, or almost exactly, the same movement again and again." In light of our holding in *Baysinger*, the Commission's decision in *Throckmorton* is erroneous, as a matter of law, to the extent that it requires claimants to prove "exact, or almost exactly, the same movement again and again."

In discerning a definition for the term "rapid repetitive"[1], we are bound to give the words their ordinary meaning, give effect to the intent of the legislature, and make use of common sense. *State Office of Child Support Enforcement v. Harnage*, 322 Ark. 461, 910 S.W.2d 207 (1995).

In its ordinary usage, rapid means swift or quick. CONCISE OXFORD DICTIONARY 1137 (9th Ed. 1995). In the present case, appellant testified that her job entailed assembling electrical components on boards by gripping and twisting short wires on small pieces for eight to ten hours a day, five to six days a week on an assembly line. Further, when appellant returned to work under her doctor's light-duty orders, she was restricted to placing no

---

[1] At least one commentator has noted the anomalous inclusion of "rapid" in Arkansas's statute, and suggested that, "Possibly, the term rapid does not have any real significance in the 1993 Act. The addition of the term may be the result of unartful drafting arising out of the common knowledge that many repetitive motion cases involve rapid repetitive motion." John D. Copeland, *The New Arkansas Workers' Compensation Act; Did the Pendulum Swing Too Far?*, 47 ARK. L. REV. 1, 15 (1994).

We are mindful that assigning meaning to the term "rapid repetitive" may inappropriately exclude valid work-related carpal tunnel syndrome claims in certain fields of work that are characterized not by the speed of the work, but by abnormally strenuous or meticulous activity with the hands. We welcome from the legislature their promise in Act 796 of 1993 stating in part, "In the future if such things as . . . the extent to which any physical condition, injury or disease should be excluded from or added to coverage by the law . . . it shall be addressed by the General Assembly . . . and should not be done by the courts." *Id.* at 2256.

more than one board per minute onto the line. It is clear to us that reasonable minds could not agree that appellant's testimony does not establish that her job did involve swift or quick motion. While testimony on how many boards appellant assembled in a given day might better prove rapidity, it is a matter of common sense that reasonable minds would expect work on an assembly line to move at a swift or quick pace.

■ Further, our recent opinion in *Baysinger v. Air Systems, Inc.*, 55 Ark. App. 174, 934 S.W.2d 230 (1996), stated, "We feel that the Commission's interpretation of the statute is too restrictive and precludes multiple tasks — such as the hammering and grinding motions performed by claimant — from being considered together to satisfy the requirements of the statute." *Id.* at 176, 934 S.W.2d at 231. While *Baysinger* addressed the repetitive nature of a claimant's CTS, and the Commission in this case takes issue with the "rapid" prong of the rapid-repetitive analysis, *Baysinger* is analogous to the facts here, and supports reversal based on the fact that the Commission's application of "rapid" is not supported by substantial evidence.

■ The appellant in *Baysinger* was a metal worker who used his hands to shape, grind, polish, and pound pieces of metal with heavy vibrating tools. We remanded to the Commission for a finding of whether such exertion, considered together, would satisfy the requirements of the statute. Here, when considered together, reasonable minds could not agree that appellant's assembly-line work of gripping, twisting, and squeezing wires to secure small components to boards all day long does not qualify as "rapid repetitive" in the ordinary and generally accepted meaning of the words. Therefore, we reverse and remand to the Commission for an award of benefits.

### III.   Statutory Construction

Next, appellant argues that the Commission's interpretation of Ark. Code Ann. § 11-9-102(5)(A)(ii)(a) (1996) is erroneous based on the plain meaning of the Act, the legislative intent, and various maxims of statutory interpretation. Specifically, appellant argues that it is unnecessary to prove rapidity and repetition when

there is a diagnosis of CTS since CTS is specifically defined as compensable in the statute. The relevant part of the statute reads:

> (5)(A) "Compensable injury" means:
>
> (ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:
>
> (a) *Caused by rapid repetitive motion. Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition*;

Ark. Code Ann. § 11-9-102 (5)(A)(ii)(a) (1996) (emphasis added).

Commissioner Humphrey, dissenting from the Commission's decision in the present case, best stated appellant's argument for applying the statute to CTS claimants:

> The plain language of the statute in question supports claimant's contention, in that it explicitly states that CTS is both compensable and falls within the *definition* of "rapid repetitive motion" — *without* provision or regard for how either "rapid" or "repetitive" are themselves defined. Thus, Ark. Code Ann. 11-9-102(5)(A) amounts to no less than an affirmative declaration that CTS *is*, without limitation, a compensable injury *already* within the category of injuries caused by rapid repetitive motion.

(Emphasis in original.)

■ ■ Appellant discusses the law of statutory interpretation for her argument that CTS is specifically categorized as compensable. However, the first rule in considering the meaning of a statute is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Henson v. Fleet Mortg. Co.*, 319 Ark. 491, 892 S.W.2d 250 (1995). While this court has frequently cited the legislative intent expressed in Act 796 of 1993 mandating strict and literal construction of the workers' compensation statutes, and admonishing the court to leave policy changes to the legislature, this colorful history does not change the court's duty to settle disputes arising from the questioned language. Additionally, basic principles of administrative law mandate that we give some deference to an

agency's construction of statutes, and we view the Commission's construction as persuasive, unless it is clearly wrong. *Ark. Dept. of Human Serv. v. Hillsboro Manor Nursing Home, Inc.*, 304 Ark. 476, 803 S.W.2d 891 (1991).

█ While we reverse for lack of substantial evidence supporting the Commission's decision, we affirm the Commission on its holding that carpal tunnel syndrome claimants must prove rapid repetitive motion to sustain a claim for a compensable injury. In so holding, we read the challenged language of the statute *in pari materia*, or in context with the entire section defining compensable injuries, we view the Commission's construction as persuasive, and we hold that carpal tunnel syndrome is not exempted from the proof requirement of other gradual-onset injuries, but is merely listed as an example of a type of gradual-onset injury that may be proven by evidence of rapid repetitive motion.

Affirmed in part, reversed in part, and remanded for an award of benefits.

STROUD and ROAF, JJ., agree.

MEADS and NEAL, JJ., concur.

GRIFFEN, J., dissents.

MARGARET MEADS, Judge, concurring. I concur with the majority opinion, which reverses the decision of the Workers' Compensation Commission in this case for lack of substantial evidence. That finding, in my judgment, makes it unnecessary for us to reach appellant's argument that the Commission's interpretation of Ark. Code Ann. § 11-9-102(5)(A)(ii)(a) (1996), is erroneous.

The majority opinion clearly and logically reaches the conclusion that reasonable minds could not agree that appellant's assembly line work does not qualify as "rapid repetitive" in the ordinary and generally accepted meaning of the words, and I agree with it. Having so determined, there is no need for interpretation of the statute.

NEAL, J., joins in this concurrence.

WENDELL L. GRIFFEN, Judge, dissenting. While I agree that Ark. Code Ann. § 11-9-102(5)(A)(ii) requires proof of rapid repetitive motion in order to establish a compensable carpal tunnel syndrome injury pursuant to that provision of the Workers' Compensation Law, I disagree with and dissent from the majority opinion because it reverses the Commission's determination that appellant failed to prove that her carpal tunnel syndrome condition was caused by rapid repetitive motion arising out of and in the course of her employment. Simply put, I cannot agree that mere proof that one performs a given series of tasks "over and over again for eight to ten hours a day, five to six days a week, with two fifteen-minute breaks, a thirty-minute lunch break, and short restroom breaks as needed for nearly a year" (majority opinion) satisfies the rapid repetitive motion causation requirement, and certainly not as a matter of law. The record contains no proof about how many times appellant did anything on her job, let alone how rapidly she did it. Therefore, I believe that reasonable persons could have reached the same conclusion that the Commission reached, namely, that appellant failed to prove by a preponderance of the evidence that her carpal tunnel syndrome condition was caused by rapid repetitive motion arising out of and in the course of the employment. For that reason I would affirm the Commission; however, I would also provide the Commission with a workable standard that it could at least apply in deciding the many cases that are certain to arise under this statute.

On one hand, the majority has properly rejected the Commission's definition of "rapid repetitive" as meaning a notably high rate of activity involving the exact, or almost exactly, same movement again and again over extended periods of time. I agree that our decision last year in *Baysinger v. Air Systems, Inc.*, 55 Ark. App. 174, 934 S.W.2d 230 (1996), means that this definition cannot stand. The case now before us presents the proper situation for defining rapid repetitive motion so that the Commission can apply an approved definition to future cases. For reasons that are unclear, the majority opinion does not provide that guiding definition, yet remands the case to the Commission to continue wrestling with the problem. One would think that the proper role of

an appellate court is to provide the very guidance that the majority opinion is careful to avoid.

On the other hand, there is no proof before us about how rapidly appellant assembled electrical components on boards. Appellant presented no proof to the Commission and has pointed to nothing in the record that establishes how many boards she assembled per minute, per hour, or otherwise. The record does not show how many other persons did the same job on the assembly line, the speed of the assembly line, the frequency with which the boards arrived at appellant's work station, whether appellant assembled every board, every other board, every third board, or assembled the boards according to any other arrangement. Mere proof that she worked on an assembly line for eight to ten hours a day, five to six days a week, proves nothing about how rapidly appellant did anything, let alone how repetitiously she did anything rapidly.

I recognize that any rule will necessarily fail to cover every kind of case that involves rapid repetitive motion, and that the Commission will use its special knowledge concerning workplace injuries in evaluating whether the proof in specific cases fits whatever definition of rapid repetitive motion that is crafted. Nevertheless, we owe it to the Commission, its law judges, and the lawyers who must counsel and represent workers and employers to articulate some meaningful standard that can be used to assess the proof. If one accepts the traditional rule of statutory construction that words must be given their ordinary meaning to effect the intent of the legislature, and that we should follow common sense in that process, we may properly arrive at a workable definition for rapid repetitive motion. *Webster's Third New International Dictionary* contains the following definitions:

> "Rapid" — marked by a notably high rate of motion, activity, succession, or occurrence.
>
> "Repetitive" (from repetition) — the fact of occurring, appearing, or being repeated again.
>
> "Motion" — an act or instance of moving the body or any of its members. ·

Thus, rapid repetitive motion should be defined for purposes of the statute before us as referring to injuries caused by a fast or notably high rate of recurring motion, processes, or actions. This definition can be applied to a broad category of gradual onset conditions without becoming entangled in the specific medical characteristics of particular conditions.

There is a sensible reason why we should not expect physicians to develop or have developed a definition of rapid repetitive motion or activity. "Rapid repetitive motion" is a legal term that the Arkansas General Assembly has developed as part of the causation element for one class of injuries not caused by a specific incident or which are not identifiable by time and place of occurrence. Furthermore, even if medical science might eventually recognize the "rapid repetitive motion" term, the injuries caused by gradual onset conditions attributed to rapid repetitive motion causes will vary so widely that lawyers, judges, and litigants will not be able to apply condition-specific medical definitions with any degree of reliability. The definition that I propose is based on the ordinary usage and meaning of "rapid repetitive motion" consistent with time-honored principles of statutory construction.

It is clear that the General Assembly intended the word "rapid" to modify "repetitive" when it amended the Workers' Compensation Law in 1993 by requiring that so-called gradual onset or cumulative trauma conditions such as carpal tunnel syndrome be caused by rapid repetitive motion in order to constitute a compensable injury under the statute before us. The majority appears to recognize that to have been the legislative design. Thus, one would think that a worker claiming benefits for carpal tunnel syndrome under this provision of the statute would be required to at least prove how much of anything was done within a given period of time on a repeated basis. If the law requires proof of rapid repetitive motion, how can the requirement be satisfied without proof about how rapidly a worker's motions are repeated? Surely the law requires something other than for the Commission to take what amounts to judicial notice that work on an assembly line will move at a swift or quick pace. After all, the statute refers to the rapid repetitive motion of the worker claiming

benefits, not the speed with which the assembly line moves. Otherwise, the burden of proving rapid repetitive motion is no burden at all. A worker need only present the kind of proof found in this record, that she was employed on an assembly line, that she did the same task "over and over again," and that she worked all day, every day, at that job except for breaks and meals.

Act 793 of 1993 radically changed the way that compensable injury is defined in the Workers' Compensation Law. Before its enactment, "injury" was defined as "only accidental injury arising out of and in the course of employment." Ark. Code Ann. §11-9-102(4) (1987). However, considerable litigation arose over the years concerning whether injuries were "accidental" so as to be compensable for workers' compensation analysis. Employers argued in many instances that an "accidental injury" required proof of some specific incident rather than the gradual onset of a condition over a period of time due to repeated effort. *Stallings Bros. Feed Mill v. Stovall*, 221 Ark. 541, 254 S.W.2d 460 (1953). But in *Bryant Stave & Heading Co. v. White*, 227 Ark. 147, 296 S.W.2d 436 (1956), the Arkansas Supreme Court held that the adjective "accidental" referred to and modified the noun "injury," and did not refer to the cause of the injury, thereby obviating the requirement that the cause of the injury itself be accidental. Thus, after *Bryant Stave*, an "accidental injury" was defined to mean every injury to an employee arising out of and in the course of the employment except those injuries caused by the employee's intoxication or by her wilful intention to bring about the injury or death of herself or another.

The present statute represents the result of efforts by employers to persuade the General Assembly to narrow the compensable injury definition in 1993. Arkansas Code Annotated § 11-9-102(5)(A) contains the definition of "compensable injury," and sub-categorizes that definition into five areas. Subsection (i) specifically provides that an injury is "accidental" only if it is caused by a "specific incident and is identifiable by time and place of occurrence." Subsection (ii) refers to those injuries that arise out of the employment and within its course but are not caused by a specific incident or that are not identifiable by time and place of occurrence so as to be deemed "accidental" for compensability

analysis. The General Assembly purposely placed a causal requirement of rapid repetitive motion on carpal tunnel syndrome claims arising within subsection (ii), and also imposed a different burden of proof for those claims. Instead of the usual burden of proof (by a preponderance of the evidence), claims arising under subdivision (5)(A)(ii) must be established by a preponderance of the evidence *and* by proof that the alleged compensable injury (rapid repetitive motion arising out of and in the course of employment causing carpal tunnel syndrome in this case) is the major cause of the disability or need for treatment.

Proof of rapid repetitive motion must mean that a worker has to at least show the rate that she performed the allegedly repetitive motion and how often she repeated that motion. Otherwise, we are disregarding the legislative purpose and the judicial history that underlie the "accidental injury" versus "compensable injury" debate that has occurred in Arkansas for more than forty years concerning gradual onset conditions such as carpal tunnel syndrome. The General Assembly believed that it was resolving that debate in 1993. Despite the concerns of some observers that the changes in the Workers' Compensation Law are harsh, the legislature made it clear that courts are not to liberalize, broaden, or narrow the law's scope. Today's decision is not consistent with that plain legislative purpose to the extent that it essentially gives lip service to the rapid repetitive motion causation requirement for carpal tunnel syndrome injuries in holding that a carpal tunnel syndrome claim is a "compensable injury" absent proof about how rapidly a worker repeated anything, let alone how often she repeated it.

I respectfully dissent.