## Renate HAPNEY *v.* RHEEM MANUFACTURING COMPANY

CA 98-678                                  992 S.W.2d 151

Court of Appeals of Arkansas
Division IV and I
Opinion delivered June 2, 1999

*Sexton & Fields, P.L.L.C.*, by: *William J. Kropp III*, for appellant.

*Warner, Smith & Harris, PLC*, by: *Wayne Harris*, for appellee.

JOHN E. JENNINGS, Judge. Renate Hapney filed a workers' compensation claim, contending that she had sustained a ruptured cervical disc while working at Rheem Manufacturing on February 2, 1996. She proceeded under three alternative theories of compensability, arguing that her injury was: (1) caused by a specific incident and identifiable by time and place of occurrence under Ark. Code Ann. § 11-9-102(5)(A)(i) (Supp. 1997); (2)

caused by rapid repetitive motion under § 11-9-102(5)(A)(ii)(a) (Supp. 1997); and (3) a back injury not caused by a specific incident (i.e., gradual onset) under § 11-9-102(5)(A)(ii)(b) (Supp. 1997). The administrative law judge found the claim to be compensable, but the Commission reversed, holding that Mrs. Hapney had failed to meet her burden of proof. The issue on appeal is whether the Commission's decision is supported by substantial evidence. We hold that it is and affirm.

Mrs. Hapney had worked for Rheem Manufacturing since 1984. Before February 2, 1996, she worked primarily as a press operator, but on that day she was required to fill in on the assembly line. Her job was to attach two metal parts to an air-conditioning unit with a total of six screws. She testified that this required her to bend over to fit each plate to the unit and attach it with three screws. On February 2, she assembled 316 units during a ten-hour shift.

She testified that although her neck and right arm were hurting, she finished out her shift. On Monday, February 5, she returned to work and told the plant nurse she was having shoulder and neck pains and was sent to the company doctor, Dr. Carson. She was placed on light duty and worked the remainder of that week. On March 29, a cervical MRI disclosed a herniated disc at C5-6.

Mrs. Hapney testified that she had had an injury in April 1993 which resulted in shoulder surgery. She testified that she had had neck pain from time to time since that injury, but that the pain after February 2, 1996, was more severe. Rheem Manufacturing contended before the Commission that the herniated disc was a continuation of the 1993 injury. While Mrs. Hapney testified that she did not know when she was injured in February 1996, she believed it to be on February 2 because that was when the pain increased.

When the question is whether the Commission's decision is supported by substantial evidence, we will reverse only if we are persuaded that fair-minded persons could not reach the

Commission's conclusion. *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998). The decision of the Commission is entitled to the same weight we give to a jury verdict. *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998).

■ Mrs. Hapney first contends that her herniated cervical disc is compensable under Ark. Code Ann. § 11-9-102(5)(A)(ii)(b) as "a back injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence." The Commission held that the gradual-onset exception for back injuries does not extend to the neck. Arkansas Code Annotated section 11-9-704(c)(3) (Repl. 1996) requires that the statute be strictly construed. Strict construction means narrow construction. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998). Strict construction requires that nothing be taken as intended that is not clearly expressed. *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993). The doctrine of strict construction is to use the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996).

■ The first definition of "back" in the *American Heritage Dictionary* (2nd ed.) is "the region of the vertebrate body located nearest the spine, in man consisting of the rear area from the neck to the pelvis." The second definition is "the backbone or spine." The first definition contained in *Merriam Webster's Collegiate Dictionary* (10th ed.) is "the rear part of the human body esp. from the neck to the end of the spine." It is defined in the *Sloan-Dorland Annotated Medical-Legal Dictionary* as "the posterior part of the trunk from the neck to the pelvis." Although the cervical vertebrae are certainly part of the spine, we think that in common parlance "back" and "neck" are used to described different parts of the human body. The statute is at best ambiguous, and the supreme court has recently said that under those circumstances the administrative agency's interpretation is highly persuasive. *Social Work Licensing Bd. v. Moncebaiz*, 332 Ark. 67, 962 S.W.2d 797 (1998). Given the requirement of strict construction, we conclude that the Commission's interpretation of the statute was cor-

rect. The legislature could have easily used the word "spine" rather than "back," if that was what it intended.

■ Appellant next contends that the Commission was bound to find that her injury was the result of a "specific incident" under Ark. Code Ann. § 11-9-102(5)(A)(i). In this regard, the Commission noted that the appellant testified that she did not know when she was injured and did not report a work-related injury to her employer on February 2. It also noted that she did not provide a history of a specific incident to any of her treating physicians. We hold that the Commission's conclusion in this regard is supported by substantial evidence. *See, e.g., Stallings Bros. Feed Mill v. Stovall*, 221 Ark. 541, 254 S.W.2d 460 (1953); *Mikel v. Engineered Speciality Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997).

■ Finally, appellant contends that the Commission erred in not concluding that her neck injury was caused by rapid repetitive motion under Ark. Code Ann. § 11-9-102(5)(A)(ii)(a). The Commission held that her actions were not sufficiently rapid to satisfy the statute and that furthermore there was insufficient evidence as to which of her movements on the assembly line actually involved her neck. While we have struggled with the language of this particular statute, we have not attempted to reduce the law to a mathematical formula. The issue will ordinarily be a question of fact, not one of law. *See Malone v. Texarkana Pub. Schs.*, 333 Ark. 343, 969 S.W.2d 644 (1998). Under the facts of this case we believe that the Commission's conclusion is supported by substantial evidence. *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998), is distinguishable on several grounds. The injury there was carpal tunnel syndrome, a typical "rapid repetitive" injury, and the claimant in *Boyd* had performed the same task for sixteen years, as opposed to the one day involved in the case at bar.

For the reasons stated, the decision of the Commission is affirmed.

STROUD and CRABTREE, JJ., agree.

GRIFFEN, ROAF, and ROGERS, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this case and remand for an award of benefits, because I do not believe that Hapney should be denied benefits for an injury to her lower cervical area with trapezus muscle involvement, given the lack of a precise definition of "back injury" in our Workers' Compensation Statutes.

In pertinent part, Ark. Code Ann. § 11-9-102(5)(A)(ii)(b) (Repl. 1996) defines "Compensable injury" as:

. . .

(ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

. . .

(b) A back injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence[.]

The treatment notes from Hapney's doctors indicate that her complaints were of shoulder pain, primarily, with some cervical involvement. The initial diagnosis was right trapezius strain. The trapezius is either of the two large flat triangular muscles running from the base of the occiput, the back part of the skull, to the middle of the back. Eventually, she underwent an MRI of her spine, and it revealed disc herniation at C5-6 and some protrusion at C6-7 that was considered degenerative in nature. The treatment recommended by her physician was a spinal fusion at C5-6.

*Mosby's Medical & Nursing Dictionary* defines "back" as "the posterior portion of the trunk of the body between the neck and the pelvis." It goes on to state, however, that

the back is divided by a middle furrow that lies over the tips of the spinous processes of the vertebrae. The upper cervical vertebrae cannot be felt in this furrow, but the seventh cervical vertebra is easily distinguished just above the more prominent first

thoracic vertebra. The skeletal portion of the back includes the thoracic and the lumbar vertebrae and both scapulas.

"Neck" is defined as "a constricted section, at the part of the body that connects the head with the trunk." However, as is apparent from the anatomical drawing appended to this opinion, this "constricted section" may not appear until well up the cervical spine. Further, the very next entry in *Mosby's*, "backache," defines that malady as "pain in the lumbar, lumbosacral, or *cervical* regions of the back." (Emphasis added.) Additionally, the trapezius, the muscle in which Hapney's pain was first localized, is a muscle primarily of the back that extends to the base of the skull. Therefore, pain in the trapezius from overuse could be attributed to either the back, and be compensable, or the neck, and not be. Clearly, the lay terminology "back injury" does not provide us with a precise definition and renders the subject statutory provision ambiguous.

Although we are required to strictly construe workers' compensation statutes, Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996), *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998), this does not mean that we should impose a restriction on the scope of "back injury" that the legislature could easily have employed, but did not. The majority concludes that the legislature could have referred to spinal injuries rather than back injuries if it had intended to include the entire spinal column; it can just as easily be said that the legislature could have designated "thoracic" and "lumbar" spinal injuries had it intended to limit compensation to just those areas of the human back or spine.

The Arkansas Supreme Court has recently set forth the standard for review of ambiguous language in a workers' compensation statute in *Wilson v. Timberline Int'l, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998), where the court stated:

> We begin our reconsideration by noting that the statutory language at issue is ambiguous; we must therefore interpret it using tools of statutory construction. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning. *Vanderpool v. Fidelity & Cas.*

*& Inc. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Graham v. Forrest City Housing Auth.*, 304 Ark. 732, 803 S.W.2d 923 (1991). In attempting to ascertain legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, legislative history, and other appropriate matters that shed light on the matter. *Board of Trustees v. Stodola*, 328 Ark. 194, 942 S.W.2d 255 (1997).

In this regard, Ark. Code Ann. § 11-9-101(b) (Repl. 1996) states in pertinent part: "The primary purposes of the workers' compensation laws are to pay timely temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment[.]" That is the stated intent of the legislature, whatever other motives may have entered into the drafting of the specific provisions of the 1993 Act. Although we are sometimes required to turn a blind eye to work-related injuries not included by the legislature in the statutory definition of compensability, Ark. Code Ann. § 11-9-1001 (Repl. 1996); *see, e.g. Jobe v. Wal-Mart Stores, Inc.*, 66 Ark. App. 114, 987 S.W.2d 764 (1999), *Coble v. Modern Bus. Sys.* 61 Ark. App. 26, 966 S.W.2d 938 (1998), *Lay v. United Parcel Serv.*, 58 Ark. App. 35, 944 S.W.2d 867 (1997), and *Langley v. Danco Constr. Co.,* 57 Ark. App. 295, 944 S.W.2d 142 (1997), in this instance the majority has done so unnecessarily, and without justification.

In Hapney's case, the injury she suffered was to the areas of the lower cervical spine, which are as much identified with the trunk or upper back as with the neck. Denying her benefits because they are labeled "cervical" as opposed to "thoracic" is, in this instance, arbitrary and capricious.

ROGERS, J., joins.

*Appendix:*

**POSTERIOR VIEW OF SKELETAL SYSTEM**
**Reprinted with the permission of the C.V. Mosby Company;**
*Mosby's Medical & Nursing Dictionary*, Copyright 1983.
For print media only; no electronic reproduction.

WENDELL L. GRIFFEN, Judge, dissenting. Although I agree that points two and three of the appeal should be affirmed, I disagree with the majority opinion regarding point one. That point maintains that the Workers' Compensation Commission erred when it held that the gradual-onset provision of Ark. Code Ann. § 11-9-102(5)(A)(ii)(b) does not render compensable an injury to the cervical spine because such an injury is not a "back injury" within the meaning of the statute. I would reverse the Commission on this point because the seven cervical vertebrae are part of the vertebral column known as the spine.

Appellant has been diagnosed as having herniated discs at two levels of her cervical spine (C5-6 and C6-7), with resulting spinal stenosis (narrowing of the nerve roots serving the affected vertebrae). She had worked for the employer for twelve years before February 2, 1996. On that date, an ice storm struck her locale and caused a shortage of workers. Appellant was temporarily assigned new job duties on a moving assembly line known as the 800 line. The reassigned job required that appellant use a screw gun to assemble parts to air conditioning and heating units while bending over the line. She performed the required movements on a new unit on the average of once every 1.89 minutes and completed an average of just over 31 units per hour. While doing so, her neck and right arm began hurting extensively. By the end of the day, she could not turn her head, it was painful for her to sit, and it was painful for her to lie down. These problems had not existed before February 2, 1996.

An Administrative Law Judge found that appellant proved that her injury was compensable under Ark. Code Ann. § 11-9-102(5)(A)(ii) (Repl. 1997), that the medical treatment for her injury was reasonable and necessary, that appellant had been rendered temporarily totally disabled from the February 2, 1996 injury date to a date yet to be determined, and that the employer and its insurance carrier had controverted appellant's claim so as to warrant the award of the maximum statutory attorney's fee. The Commission reversed the award in a split decision. The Commission held that the gradual-onset provision for nonspecific injuries prescribed in Ark. Code Ann. § 11-9-102(5)(A)(ii)(b) regarding

back injuries does not apply to injuries to the cervical spine such as sustained by appellant.

Although appellant attacks the Commission's decision that she failed to prove her neck injury was caused by a specific incident and is identifiable by time and place of occurrence as prescribed by Ark. Code Ann. § 11-9-102(5)(A)(ii)(a), I agree that a substantial basis exists in the record for the decision denying relief on that theory. Appellant testified that she did not know when her injury occurred on February 2, 1996, but that she was sure that it happened on that date during her work on the 800 line. Although I disagree with the Commission's view that this testimony is inadequate to establish a specific incident, our supreme court's decision in *Stallings Bros. Feed Mill v. Stovall*, 221 Ark. 541, 254 S.W.2d 460 (1953), and our decision in *Mikel v. Engineered Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997), convince me that appellant's admission that her pain and injury resulted from a day of work on the 800 line supports the Commission's determination that her injury did not result from a specific incident, identifiable by time and place of occurrence.

Appellant also argues that her complaints stem from rapid repetitive motion as to be compensable under Ark. Code Ann. § 11-9-102(5)(A)(ii)(a), and that the Commission erred by deciding that she failed to prove that theory. Although I disagree with the Commission's determination that appellant's work of inserting six screws to each unit at the rate of 31.6 units per hour or one almost every two minutes while bending, stooping, and turning her neck was not rapid repetitive motion within the meaning of the statute, there appears to be no medical evidence that appellant's injury resulted from rapid repetitive motion. I am reluctant, given our standard of appellate review, to second-guess what appears to be the Commission's factual determination on this subject. The Commission may well have gotten this one wrong, but unless we are prepared to say that appellant's activities were rapid repetitive motion as a matter of law, reversal would require us to make what amounts to a de novo review of the facts.

However, I believe that the Commission erred as a matter of law when it held appellant's cervical spine injuries noncompensa-

ble under Ark. Code Ann. § 11-9-102(5)(A)(ii)(b). Given that our decisions have treated injuries to the shoulder as injuries to the body as a whole rather than scheduled injuries, *see Taylor v. Pfeiffer Plumbing & Heating Co.*, 8 Ark. App. 144, 648 S.W.2d 526 (1983), whether an injury to the cervical spine is a back injury is a question of law. As such, the Commission's determination of that issue is instructive for purposes of appellate review, but does not justify the deference we accord its factual determinations. Even the definition of "back" cited by counsel for appellee at page 14 of his brief includes the "vertebral column with associated muscles (erector spinae and trasversospinalisis) and overlying integument" within the meaning of "back."

It is true that the back commonly refers to, in lay parlance, the "posterior aspect of trunk, below neck and above buttocks," as appellee argues. Yet the appellant's lay reference to her injury as involving her neck does not change the fact that it was, medically, to her cervical spine at two levels. Unless we are to judicially declare the cervical spine to not be part of the vertebral column — a declaration that would offend medical science at the very least — we should reverse the Commission's decision on this point.

The term "back" in § 11-9-102(5)(A)(ii)(b) is not a term of art or a technical term within the meaning of the Workers' Compensation Law or medical science, for that matter. In fact, the medical diagnosis attached to appellant's injury is that she sustained herniated discs at two levels of her cervical spine (C5-6 and C6-7), with resulting spinal stenosis (narrowing of the nerve roots serving the affected vertebrae). If medical science considers the cervical spine to be part of the "vertebral column with associated muscles (erector spinae and trasversospinalisis) and overlying integument" so as to be within the meaning of the term "back" — a fact conceded by counsel for appellee in its brief — I do not understand why the judicial system (including the quasi-judicial Commission) should be deemed better informed.