Renate HAPNEY *v.* RHEEM MANUFACTURING
COMPANY

99-732                                    26 S.W.3d 771

Supreme Court of Arkansas
Opinion delivered June 8, 2000
[Petition for rehearing granted in part and denied in part
September 14, 2000.* ]

---

* CORBIN and THORNTON, JJ., dissent in part and concur in part. *See* 342 Ark. 11, 26
S.W.3d 777 (2000).

Sexton & Fields, P.L.L.C., by: William J. Kropp III, for appellant.

Warner, Smith & Harris, PLC, by: Wayne Harris, for appellee.

DONALD L. CORBIN, Justice. Appellant Renate Hapney appeals the decision of the Arkansas Workers' Compensation Commission denying her claim for benefits for a ruptured cervical disc from her employer, Appellee Rheem Manufacturing Company. The Commission found that Mrs. Hapney had failed to meet her burden of proof that she suffered a compensable injury. The Arkansas Court of Appeals affirmed the Commission's decision, by a tie vote, in Hapney v. Rheem Mfg. Co., 67 Ark. App. 8, 992 S.W.2d 151 (1999). We granted Mrs. Hapney's petition for review of that decision pursuant to Ark. Sup. Ct. R. 1-2(e)(i). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. White v. Georgia-Pacific Corp., 339 Ark. 474, 6 S.W.3d 98 (1999).

## Standard of Review

In appeals involving claims for workers' compensation, we view the evidence in a light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. Id.; Burlington Indus. v. Pickett, 336 Ark. 515, 988 S.W.2d 3 (1999). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Williams v. Prostaff Temps., 336 Ark. 510, 988 S.W.2d 1 (1999). There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. Brower Mfc. Co. v. Willis, 252 Ark. 755, 480 S.W.2d 950 (1972). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. White, 339 Ark. 474, 6 S.W.3d 98.

*Facts*

The record reflects that Mrs. Hapney has been employed by Rheem since 1984, where she primarily worked as a press operator. On Friday, February 2, 1996, Mrs. Hapney was transferred to an assembly line and given new job duties that required her to attach two metal plates to air conditioning units. Specifically, these duties consisted of using an orr to line up the screw holes and then using a screw gun to place six screws in each unit. In order to complete her assigned task, Mrs. Hapney stated that she had to bend down six times and turn her neck a little when attaching the plates to each unit. Mrs. Hapney worked a nine-hour shift on that day and assembled a total of 316 units. According to her calculations, Mrs. Hapney would have bent down over 1,800 times that day.

Mrs. Hapney testified that while performing her job duties, her neck and right arm began to hurt, but that she was able to complete her shift. According to Mrs. Hapney, the pain progressively worsened, and eventually she was unable to move her head. She also reported experiencing numbness in her right arm. Mrs. Hapney reported to Dr. Carson, Rheem's company doctor, on Monday February 5, 1996: Dr. Carson put her on restriction or light work, but then completely took her off work on February 13. Mrs. Hapney remained off work until September 3, 1996.

Mrs. Hapney was referred to the Holt Krock Clinic on February 15 where she was examined by Dr. William Sherrill. Dr. Sherrill ordered a cervical MRI on March 29, and it revealed disc herniation at C5-6 and some protrusion at C6-7 resulting in spinal stenosis. Thereafter, Dr. Sherrill arranged for Mrs. Hapney to see a neurosurgeon, Dr. Luis Cesar. Dr. Cesar recommended that Mrs. Hapney undergo an anterior cervical fusion at C5-6. In a letter dated October 11, 1996, Dr. Cesar reported that to the best of his knowledge the major cause of Mrs. Hapney's problem was the February 2 injury. This opinion refuted Dr. Cesar's earlier opinion that Mrs. Hapney's disability may have been related to a previous shoulder injury sustained on April 19, 1993.

Mrs. Hapney admitted that she had previously suffered an injury in April 1993, which resulted in shoulder surgery, and that she had experienced neck pain on occasion ever since. She further stated, however, that the pain she began experiencing on February 2 was different and more severe than any other pain she had previ-

ously experienced. Moreover, none of Mrs. Hapney's medical records from the 1993 injury indicate that she suffered from any problems with her cervical spine.

A hearing was held before an administrative law judge (ALJ) on October 29, 1996. In a January 31, 1997 opinion, the ALJ found that Mrs. Hapney had proven that her neck injury was compensable under the gradual-onset exception for both rapid repetitive motion injuries and back injuries, as codified at Ark. Code Ann. § 11-9-102(4)(A)(ii)(a) or (b) (Supp. 1999).[1] Rheem appealed the ALJ's decision to the Commission.

After conducting a *de novo* review of the entire record, the Commission concluded that Mrs. Hapney had failed to prove that she sustained a compensable injury because the gradual-onset exception for back injuries does not extend to injuries of the cervical spine. The Commission found, however, that the rapid repetitive motion exception is applicable to cervical injuries, but ultimately determined that Mrs. Hapney failed to meet her burden of proof under this exception. Specifically, the Commission opined that while Mrs. Hapney was required to perform her movements every 1.89 minutes, this was not a sufficiently high rate of speed to satisfy the rapid requirement. Finally, the Commission found that Mrs. Hapney had also failed to prove that she sustained a specific incident injury, identifiable by time and place. Mrs. Hapney now appeals this order.

*Injury to Cervical Spine*

For her first point on appeal, Mrs. Hapney argues that the Commission erred in determining that the gradual-onset exception for back injuries as set forth in section 11-9-102(4)(A)(ii)(b) does not apply to the injury she suffered to her cervical spine. Under this provision, "compensable injury" means:

> (ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

---

[1] At the time this case was before the Commission and the court of appeals, this statute was codified at Ark. Code Ann. § 11-9-102(5)(A) (Repl. 1966).

....

     (b) A back injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence[.]

The term "back injury" is not defined. Mrs. Hapney argues that it would be absurd to limit the meaning of back as found in the statutory provision to only the lower part of the spine. On the other hand, Rheem argues that if the legislature had intended injuries such as Mrs. Hapney's to be compensable under this exception, then they would have made reference to injuries to the spine or would have included a provision for neck injuries in the statute.

    ■ The issue before us is one of statutory construction. We note at the outset that the term "back injury" as stated in section 11-9-102(4)(A)(ii)(b) is ambiguous and requires us to resort to the tools of statutory construction. A cardinal rule of statutory construction is to give effect to the intent of the legislature. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998); *Citizens to Establish a Reform Party v. Priest*, 325 Ark. 257, 926 S.W.2d 432 (1996). In considering the meaning of a statute, we consider it just as it reads, giving the words their ordinary and usually accepted meaning. *Nelson v. Timberline Int'l, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998). In ascertaining legislative intent, this court may examine statutory history as well as conditions contemporaneous with the time of the enactment, the consequences of interpretation, and all other matters of common knowledge within this court's, and in this case the Commission's, jurisdiction. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998); *Priest*, 325 Ark. 257, 926 S.W.2d 432.

    ■ This court recognizes its duty to strictly construe workers' compensation statutes pursuant to Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). *See Lawhon Farm Servs.*, 335 Ark. 272, 984 S.W.2d 1. Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Id.,* citing *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993). The doctrine of strict construction requires this court to use the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). Even in light of this strict construction requirement, we believe that the Commission erred in excluding an injury to the cervical spine from the gradual-onset exception for back injuries.

■ Critical to our determination is the fact that pursuant to Ark. Code Ann. § 11-9-519 (Supp. 1999), the Commission has adopted the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) to be used in the assessment of anatomical impairments. A review of the *Guides* reveals that in assessing impairments, there is no specific set of guidelines for back injuries. Instead, the *Guides* addresses such impairments in the context of the spine. In describing the musculoskeletal system, the *Guides* states that the upper extremity, the lower extremity, the spine, and the pelvis are each to be considered a unit of the whole person. The *Guides* goes on to state that the spine normally consists of twenty-four vertebrae. The cervical region has seven vertebrae, C1 through C7; the thoracic region has twelve vertebrae, T1 through T12; and the lumbar region has five vertebrae, L1 through L5. While Appellee attempts to distinguish this case by arguing that the "neck" and "back" are two different units under common parlance, such an argument ignores the fact that the Commission is not to consider impairments in terms of common parlance, but rather based on the factors enumerated in the *Guides*. The *Guides* does not treat impairments in terms of neck and back injuries, but rather as injuries to the spine. It is important to note that while Mrs. Hapney referred to her pain in terms of neck pain, the medical evidence submitted in this case diagnosed Mrs. Hapney in terms of an injury to her cervical spine, not her neck.[2]

■ A review of both general and medical dictionaries further reveals that the terms "back," "spine," and "neck" are commonly used interchangeably. *Webster's New World Dictionary* 99 (3d College Ed. 1988) defines back in relevant part as:

> 1. the part of the body opposite to the front; in humans and many other animals, the part to the rear or top reaching from the nape of the neck to the end of the spine.

> 2. the backbone or spine.

"Neck" is defined as "that part of a human or animal joining the head to the body, including the part of the backbone between the skull and the shoulders." *Id.* at 906. Finally, "spine" is defined as "the spinal column; backbone." *Id.* at 1292. The *Sloane-Dorland Annotated Medical-Legal Dictionary* 74 (1987) defines "back" as "the

---

[2] As previously pointed out, an MRI revealed that Mrs. Hapney suffered from disc herniation at C5-6 and some protrusion at C6-7 resulting in spinal stenosis.

posterior part of the trunk from the neck to the pelvis; called also *dorsum.* See also *spine;* and *vertebra.*" Clearly, these definitions indicate that the back encompasses that region of the body beginning at the neck.

Finally, at least one other jurisdiction has addressed a similar issue. In *Newberg v. Thomas Indus.*, 852 S.W.2d 339 (Ky. App. 1993), the Kentucky Court of Appeals, in reviewing a workers' compensation claim, held that the cervical vertebrae are part of the worker's back. There, as here, an argument was made that there was a popular and common distinction between "back" and "neck." The court rejected this argument, pointing out that the legislature had adopted the *Guides,* which states that the back may be divided into three regions: the cervical, dorsal, and lumbar regions. *Id.* at 340, 341. In a footnote to its opinion, the court noted that the *Guides* had been revised, but concluded that such revision did not change the court's analysis of compensability.

█ Based on the foregoing, we cannot say that fair-minded persons would reach the same conclusion as the Commission that the gradual-onset exception for back injuries does not encompass injuries to the cervical spine. Thus, we reverse and remand this matter to the Commission to determine whether Mrs. Hapney has met her burden of proof with regard to the other elements of compensability set forth in section 11-9-102. Having reached this conclusion, we need not address the remaining points on appeal.

Reversed and remanded.

GLAZE and BROWN, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority opinion comes to what may be an equitable decision in awarding benefits to Renate Hapney, but in doing so, it utilizes a rather odd interpretation and definition of the term "back," as that term is employed in Ark. Code Ann. § 11-9-102(5)(A)(ii)(b) (Supp. 1999). Under the workers' compensation statute, a worker sustains a compensable injury if the injury is a *back* injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence.

In the present case, it is undisputed that Hapney sustained a neck and cervical spine injury, but the statute in issue makes no mention of a neck injury. Nonetheless, the majority opinion says the word "back" includes a neck injury, even though in common

medical parlance "back" is defined as the posterior aspect of the trunk, *below neck* and above buttocks. *See PDR Medical Dictionary*, 1st Edition (1995). Similarly, "back" is defined in the *Sloane-Dorland Annotated Medical-Legal Dictionary* (1987) as the posterior part of the trunk from the neck to the pelvis. *See also Stedman's Medical Dictionary*, 26th Edition (1995) (posterior aspect of trunk, below neck and above buttocks). In considering the meaning of the term "back" as employed in § 11-9-102(5)(A)(ii)(b), its accepted definition includes that part of the posterior aspect of the trunk *below the neck*, and this court's duty on review of this case is to accept that meaning. *See, e.g., Nelson v. Timberline Int'l, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998).

The majority opinion injects needless ambiguity to the reading of the statute by discussing the term "spine" — a word that is not found in the statute. Clearly, a person's neck and back are a part of the spine, but that has nothing to do with this court's duty to fairly interpret the term "back" used in § 11-9-102(A)(ii)(b). If the General Assembly had intended to include neck injuries, it could easily have done so. The majority further confuses matters by citing a Kentucky case, *Newberg v. Thomas Indus.*, 852 S.W.2d 339 (Ky. App. 1993). There, the Kentucky Court of Appeals, in construing a Kentucky statute *liberally*, concluded "back" shall include cervical spine injuries.[1] (Emphasis added.) Arkansas law requires a different standard of review than Kentucky's, since Ark. Code Ann. § 11-9-704(c)(3) provides that administrative law judges, the Commission, and any reviewing court shall construe the provisions of our workers' compensation provisions *strictly*. (Emphasis added.) The General Assembly gave further definition, in Ark. Code Ann. § 11-9-1001 (Repl. 1996), to what is meant by strict construction, stating "if such things as . . . the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by an administrative law judge, the Workers' Compensation Commission,

---

[1] The Kentucky case in part relied on the American Medical Association's Guides to the Evaluation of Permanent Impairment, which is used to evaluate workers' disabilities. Under the *Guides'* approach to impairment evaluation, the spine is considered to be equivalent to a unit of the whole person and includes the cervical, thoracic, and lumbar regions. While the entire spine may be separated into three regions for evaluation-of-impairment purposes, such guidelines do not establish liability of an employer for a gradual onset injury to a worker's back or neck.

or the courts." In the instant case, the General Assembly provided for benefits for gradual onset injuries to the back, but omitted mention of such benefits for injuries to the neck. As I read the law, the General Assembly has reserved to itself the authority to either exclude or add coverage under the Workers' Compensation Law.

To reiterate, the Kentucky court in the *Newberg* decision reviewed an employee's claim for benefits by liberally construing that state's workers' compensation statutes. While our state Workers' Compensation Law, prior to 1993, entitled employee-claimants to a broad and liberal construction, that rule of construction changed with the General Assembly's enactment of Act 796 of 1993, as is evidenced by the reading of §§ 11-9-704(c) and 11-9-1001 discussed above. In sum, the Commission was not wrong in denying Ms. Hapney's claim for a gradual onset injury to her neck, because such an injury is not specifically provided for under Arkansas's statute that defines compensable accidental injury.

While I believe the 1993 workers' compensation provision, § 11-9-102, must be read to exclude a neck injury, that interpretation does not necessarily preclude an employee's ability to file a legal action in court for damages on account of the injury. *See* Ark. Code Ann. § 11-9-105(b)(1) (Repl. 1996). Moreover, it appears to me that, considering the restrictive nature by which the General Assembly has now defined a compensable injury, it may be that an employee's remedy will likely often lie in filing suit for damages rather than seeking a remedy under the Workers' Compensation Law. For example, under prior law, a compensable injury meant only accidental injury arising out of and in the course of employment.[2] Under present law, an accidental injury exists *only if it is caused by a specific incident and is identifiable by time and place of occurrence.* (Emphasis added.) Obviously, with such restrictive language, workers may only be able to seek and obtain relief by filing suits for damages. Surely workers cannot be left without a remedy, at least in situations where the worker can show that his or her injury was negligently caused by the employer.

With such restrictive provisions designed to remove an indeterminable number of injuries from coverage under the Workers' Compensation Law, the General Assembly seems to depart from

---

[2] Injury also included occupational diseases and infections arising out of an in the course of employment. *See* Ark. Stat. Ann. § 81-1302 (Repl. 1976).

the law's purpose which was to change the common law by shifting the burden of all work-related injuries from individual employers and employees to the consuming public. *See Vanderpool v. Fidelity & Cas. Inc. Co.,* 327 Ark. 407, 939 S.W.2d 280 (1997); *Simmons First Nat'l Bank v. Thompson,* 285 Ark. 275, 686 S.W.2d 415 (1985). When the Workers' Compensation Law was enacted, employees were compelled to give up the chance of recovering unlimited damages in fault-related cases in return for a certain recovery in *all* work-related cases. *Simmons,* 285 Ark. at 279, 686 S.W.2d at 417. Eventually, the General Assembly may well discover that the 1993 Act containing the restrictive language redefining compensable accidental injury will lead to unwanted lawsuits for damages — which was the very vice the Workers' Compensation Law was designed to eliminate.

BROWN, J., joins this dissent.