WESTSIDE HIGH SCHOOL and Risk Management Services *v.*
Glenda PATTERSON

CA 02-142                                    86 S.W.3d 412

Court of Appeals of Arkansas
Division II
Opinion delivered October 9, 2002

*Matthews, Sanders & Sayes*, by: *Marci Talbot Liles* and *Gail O. Matthews*, for appellant.

No response.

LARRY D. VAUGHT, Judge. This is a one-brief appeal from a decision of the Workers' Compensation Commission. Glenda Patterson, a volleyball coach and physical-education teacher, filed a claim for workers' compensation benefits alleging that she sustained a compensable throat injury in the course and scope of her employment. She contended that she was entitled to medical benefits associated with her throat condition, which developed as a result of the raising of her voice in her coaching capacity. Appellant, Westside High School, denied her claim, contending that she could not meet the requirements of the statute to prove that she sustained an injury as the result of rapid repetitive motion. After a hearing in which Patterson appeared *pro se*, the administrative law judge denied her claim for benefits. The Commission reversed the ALJ's decision and found that Patterson established, by a preponderance of the evidence, that she sustained a gradual-onset injury caused by rapid repetitive motion. From that decision comes this appeal.

Glenda Patterson has taught physical education and coached volleyball for appellant for the past twenty-eight years. She testified that she is a very aggressive and vocal coach. In describing her daily activities she stated:

> [I]f you want me to break it down to specific minutes and hours a day, as I said, it's 130 minutes per day, three days a week. That's just the coaching part of it, in the gym. And 225 or more minutes per day, two days a week, that's game days, I use my voice trying to project it, trying to get my message across to the girls what I need for them to do on the court. And again, that's done in a gym. Lots of those times, there are other games going on in adjacent courts, so there is an extreme amount of noise in the gym when I'm doing that.

She also testified that there are Saturday tournaments, which start around 8:00 a.m. and may last until 10:00 p.m., depending on how the team does. On those days, she is constantly using her voice to tell the girls what to do. She expressed that she was an extremely vocal coach. The volleyball season lasts sixty days. During the 130-day post-season, she uses her voice 130 minutes per day at practice. In addition to her coaching duties, she teaches physical education 135 minutes per day, five days a week. Her classes are taught in the gym so she must project her voice for her twenty to thirty students to hear her. Patterson also conducted volleyball camps in the summer. She introduced a videotape of a typical volleyball match to demonstrate the use of her voice.

Patterson testified that at the beginning of the 1998 volleyball season, she was abusive with her voice and became very hoarse. She had no voice left at the end of the season, and it stayed hoarse throughout the winter. She saw Dr. William Young, M.D., a throat specialist, in February 1999, who diagnosed nodules and recommended that she rest her voice and suggested using a microphone. Patterson was also seen by Dr. Neal Beckford, M.D., a throat specialist, and Dr. Joel Kahane, Ph.D., a voice-speech pathologist. In relating the doctors' diagnoses of her injury, Patterson stated, "[T]hey all basically say the same thing, that it's through a rapid repetitive motion on my throat. It's that constant friction of them [vocal cords] rubbing back and forth that has caused these nodules. And not necessarily one day did that, but through a daily use of it, that many hours a day."

■ Appellants contend that the Commission erred in finding that appellee's voice disorder is a rapid repetitive motion injury. In reviewing decisions from the Workers' Compensation

Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Id.* A decision by the Workers' Compensation Commission will not be reversed unless it is determined that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.*

■ Arkansas Code Annotated section 11-9-102(4)(A)(ii) (Repl. 2002) provides that a compensable injury includes:

> (ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

> (a) Caused by rapid repetitive motion.

The supreme court in *Malone v. Texarkana Public Schools.*, 333 Ark. 343, 969 S.W.2d 644 (1998), noted that the legislature did not establish guidelines as to what constitutes "rapid repetitive motion" and that as a result, the determination has been made by the fact-finder in each case. After reviewing rapid repetitive motion cases, the court in *Malone, supra*, established a test for analyzing whether an injury is caused by rapid repetitive motion: "[T]he standard is a two-pronged test: (1) the tasks must be repetitive, and (2) the repetitive motion must be rapid. As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. Arguably, even repetitive tasks and rapid work, standing alone, do not satisfy the definition. The repetitive tasks must be completed rapidly." *Id.* at 350, 969 S.W.2d at 648. This court found the facts of *High Capacity Products. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998), to be the most compelling case demonstrating rapid repetitive motion presented to this court to date. There, the testimony indicated that the claimant used an airgun to assemble blocks by attaching two nuts to each block. Her assembly duties required her to ensure that one nut was placed on an average of every fifteen seconds during the majority of her shift.

In finding that appellee established a compensable, rapid repetitive injury, the Commission in the present case stated:

> The resolution of this case turns on whether claimant proved that her voice disorder was caused by rapid repetitive motion. Clearly, no prior cases parallel the facts with which we are confronted herein. The administrative law judge noted the difficulty of quantifying vocalizations per minute, concluding that the absence of this evidence was fatal to claimant's claim. This rationale is embraced by the dissent. We disagree with the administrative law judge's interpretation of the rapid repetitive motion requirement. The fallacy of her analysis is that it failed to focus on the mechanics of speech. According to *The Cambridge International Dictionary of English* "the vocal cords are a pair of folds at the upper end of the throat whose edges move quickly backwards and forwards and produce sound when air from the lungs moves over them."
>
> . . .
>
> We specifically find that a preponderance of the credible evidence supports a finding that claimant's vocal injury was caused by rapid repetitive motion. In her capacity as a coach and a teacher, claimant used her voice as a tool. As a result, she developed nodules on her vocal cords. In reaching our decision, we have considered claimant's testimony regarding her duties, and the medical evidence. We have also considered that by definition speech requires rapid repetitive motion. Finally, we note that speech entails a greater degree of rapidity than involved in *Moore*. We further find that claimant has proved all remaining statutory elements.

■ ■ The issue of whether an injury meets the rapid repetitive motion requirement will ordinarily be a question of fact, not one of law. Although a question of fact, the Commission must apply the appropriate law to the evidence before it to reach a conclusion. Here, the Commission's decision acknowledged the two-prong test set out in *Malone, supra*, for analyzing whether an injury is caused by rapid repetitive motion, but it failed to apply it to the facts of the case. As set out in *Malone*, the tasks must be repetitive and the repetitive motion must be rapid. In concluding that Patterson established that her vocal injury was caused by rapid repetitive motion, the Commission merely stated: "We have con-

sidered claimant's testimony regarding her duties, and the medical evidence. We have also considered that by definition speech requires rapid repetitive motion. Finally, we note that speech entails a greater degree of rapidity than involved in *Moore*." The Commission apparently considered the "tasks" at issue in this case to be the internal vibrations of the vocal cords as opposed to the act of speech, i.e., shouting. While there is an internal aspect of all body motions, including muscular movements, those are clearly distinguished from the "tasks" as contemplated by *Malone*. Because the Commission did not properly apply the *Malone* analysis in reaching its conclusion, we reverse and remand for further findings consistent with this decision.

Reversed and remanded.

NEAL and ROAF, JJ., agree.