2010 Ark. App. 746

**Teresa JENKINS, Appellant**

v.

**IT'S FASHION and Hartford Insurance Company of the Midwest, Appellees.**

**No. CA 10–323.**

Court of Appeals of Arkansas.

Nov. 3, 2010.

Kristofer E. Richardson, Jonesboro, for appellant.

Michael Edward Ryburn, Little Rock, for appellee.

WAYMOND M. BROWN, Judge.

Teresa Jenkins alleged that she suffered a compensable gradual-onset injury to her Achilles tendons while working for the clothing store It's Fashion. While the administrative law judge (ALJ) agreed with her, the Workers' Compensation Commission found that she failed to prove that her injury was caused by rapid, repetitive motion. Jenkins appeals, arguing that the Commission's opinion is not sup-ported by substantial evidence. Although it is possible that Jenkins's condition was caused by her standing on her feet all day at work, substantial evidence supports the Commission's opinion. Therefore, we must affirm.

*Background*

Jenkins was the manager at the It's Fashion store in Blytheville. Her duties included ensuring that the store was in operational order, scheduling the other employees, supervising the other employees, and setting up the displays. She typically worked fifty to sixty hours a week, though she occasionally worked close to ninety hours a week in order to get a store together. She alleged that she suffered a gradual-onset injury as a result of her employment. To support her claim, she presented medical records and testimony from herself and her first assistant manager, Sharisse Perkins. The medical records show that Jenkins suffered from bilateral Achilles tendinitis. In response to questions from Jenkins's attorney, Dr. Valencia Andrews–Pirtle (her treating physician) opined that Jenkins's employment was the major cause of her condition and that the condition was the result of rapid, repetitive motion.

When describing the store, Perkins stated that floor racks cover the entire store and bars are on all of the walls. According to store protocols, clothes must be arranged on the wall so that none of the wall is exposed. Perkins stated that she changed the display on the walls, but she usually stayed away from the available seven-foot ladder. Instead, she used an extendable pole to change the clothes on the walls. In contrast, she saw Jenkins use the ladder, rather than the pole, when changing the walls. The store receives a shipment of clothes every Monday, and the employees try to have the new inventory

on the wall by Thursday. But the employees' first priority is customer service. If a customer needs anything, employees are expected to immediately stop what they are doing to help.

Jenkins testified that she started working for It's Fashion in August 2007, and she worked her way up to manager by July 2008. Her job required her to be on her feet constantly. She described the process of displaying new shipments of clothing, which included putting the new clothes on the wall, taking down old clothes from the wall and putting them on racks, and taking the clearance-sale clothes off the rack.

Jenkins stated that the amount of time she spent going up and down the ladder depended on the flow of the store. She testified that, if nobody came into the store, she would constantly go up and down the ladder getting her displays done. She would spend Mondays, Tuesdays, and Wednesdays working on store displays. On cross-examination, she explained that she would not use the ladder on Mondays because she was usually processing the inventory. And she did not use it on Fridays and Saturdays because those were busy customer days. Jenkins's job also required her to go to other It's Fashion locations and help set up new stores.

Jenkins started having problems with her feet in August 2008. She described one morning when her feet would not move and she nearly fell on the floor. Her husband had to help put her back onto the bed. She then started experiencing pain. Despite this, she still continued to work a full schedule at that time. The more she worked, the worse her feet felt. She did not see a doctor for the problem until November 2008, and since that time, she has been treated with medication and physical therapy.

In support of its case, It's Fashion called district manager Crystal Trapp. Trapp visited Jenkins's store about once a month. She testified that using the ladder was not a day-to-day activity and that one would be lucky to use it a couple of times a day. She also confirmed the policy of making customer service a priority. On cross-examination, she acknowledged that the job required employees to be on their feet moving around constantly.

The ALJ awarded benefits, finding that Jenkins proved the existence of a compensable gradual-onset injury. But the Commission reversed. It found that Jenkins climbed the ladder only two to three times a day, two to three days a week. Thus, according to the Commission, she failed to prove that her condition was caused by rapid, repetitive motion.

*Analysis*

Jenkins argues that the Commission's decision is not supported by substantial evidence. She specifically contends that it erred by not finding that her job duties were rapid and repetitive in nature and by not making specific findings of fact regarding the nature of all aspects of her job duties. She also asserts that the Commission arbitrarily disregarded her treating physician's medical opinions.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence.[1] Substantial evidence is evidence that a reasonable mind might accept as adequate to support

---

1. *Smith v. City of Ft. Smith,* 84 Ark. App. 430, 143 S.W.3d 593 (2004).

a conclusion.[2] Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the ⌊5Commission's decision displays a substantial basis for the denial of relief.[3]

■■■ The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission.[4] The interpretation of medical opinion is also for the Commission, and its interpretation has the weight and force of a jury verdict.[5] But the Commission may not arbitrarily disregard medical evidence or the testimony of any witness.[6]

■■■ To establish that her bilateral Achilles tendinitis was a compensable injury, Jenkins had to prove, among other things, that it was caused by rapid, repetitive motion.[7] The standard is a two-pronged test: (1) the tasks must be repetitive and (2) the repetitive motion must be rapid.[8] The tasks must be repetitive, or the rapidity element is not reached.[9] Even repetitive tasks and rapid work, standing alone, are insufficient; the repetitive tasks must be completed rapidly.[10] But the motion need not consist of a single task; multiple tasks can constitute rapid, ⌊6repetitive motion.[11]

■■■ In urging reversal of the Commission's decision, Jenkins first argues that her constantly being on her feet a minimum of forty-five hours a week necessarily caused her to engage in rapid, repetitive motion. We have previously rejected a similar argument. In *Westside High School v. Patterson,*[12] we reversed the Commission's conclusion that a volleyball coach's constant use of her voice necessarily required rapid, repetitive motion, and we ordered the Commission to analyze the claim using the proper standard. Similarly, it would have been erroneous for the Commission to hold here that constant standing automatically constituted rapid, repetitive motion.

Jenkins also emphasizes the constant use of the ladder to set up the store. But the Commission had before it testimony from the first assistant manager and the district manager, both of whom testified that Jenkins had to use the ladder only a few times a day. Though Jenkins testified that she preferred to use the ladder for the tasks, we must defer to the Commission's finding, which is supported by Perkins's and Trapp's testimony.

And even if we were to credit her testimony regarding how often she used the ladder, we would still affirm the Commis-

2. *Williams v. Prostaff Temps.,* 336 Ark. 510, 988 S.W.2d 1 (1999).

3. *Neal v. Sparks Regional Med. Ctr.,* 104 Ark. App. 97, 289 S.W.3d 163 (2008).

4. *Stone v. Dollar Gen. Stores,* 91 Ark. App. 260, 209 S.W.3d 445 (2005).

5. *Oak Grove Lumber Co. v. Highfill,* 62 Ark. App. 42, 968 S.W.2d 637 (1998).

6. *Hill v. Baptist Med. Ctr.,* 74 Ark. App. 250, 48 S.W.3d 544 (2001).

7. *See* Ark.Code Ann. § 11–9–102(4)(A)(ii)(*a*) (Supp.2009).

8. *Malone v. Texarkana Pub. Sch.,* 333 Ark. 343, 969 S.W.2d 644 (1998).

9. *Id.*

10. *Id.*

11. *Kildow v. Baldwin Piano & Organ,* 58 Ark. App. 194, 948 S.W.2d 100 (1997); *Baysinger v. Air Sys., Inc.,* 55 Ark. App. 174, 934 S.W.2d 230 (1996).

12. 79 Ark. App. 281, 86 S.W.3d 412 (2002).

sion's finding that this task did not constitute rapid, repetitive motion. In *Lay v. United Parcel Service*,[13] we affirmed a finding that a package delivery person's tennis elbow was not caused by rapid, repetitive motion. The evidence showed that the claimant delivered eighty packages a day and that the job required him to pick up packages, record the transactions on an electronic clipboard, and return the clipboard to its holder. Each movement, however, was separated by several minutes. Similarly, her job required several actions that were subject to being broken up by helping a customer. And while she was under a constant deadline to get the store ready, she never described actions that were rapid in nature.

Next, Jenkins argues that the Commission should have made findings of fact with respect to the nature of all aspects of her job. True, the Commission's opinion mainly focuses on whether Jenkins's use of the ladder constituted rapid, repetitive motion. But on the prehearing questionnaire, Jenkins alleged, "My injury was due to repetitive motion working on ladder." Jenkins herself limited the focus to the use of the ladder, and the Commission did not err in narrowing its focus accordingly.

Finally, Jenkins asserts that the Commission arbitrarily disregarded the medical evidence. Included in the medical records was the opinion of her treating physician, who thought that Jenkins's condition was the result of her employment with It's Fashion. The Commission's opinion does not even discuss Jenkins's medical records, but it did not have to do so. It found that Jenkins's use of the ladder was not rapid, repetitive motion. Because Jenkins's failed to establish this essential element, the Commission did not

have to go any further to reject Jenkins's claim.

The record might support a finding that Jenkins's bilateral Achilles tendinitis resulted from standing constantly during the day. But this does not require reversal.[14] The Commission found that Jenkins's failed to establish that her job required rapid, repetitive motion, a necessary element of compensability. Substantial evidence supports this finding. Therefore, we must affirm.

Affirmed.

ABRAMSON and HENRY, JJ., agree.

---

13. 58 Ark. App. 35, 944 S.W.2d 867 (1997).

